**Gwen McDANIEL, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 1:89 CV 993.**

United States District Court, W.D. Michigan, S.D.

June 13, 1991.

Bradley K. Glazier, Buchanan & Bos, Grand Rapids, Mich., for plaintiff.

Jon G. March, Charles C. Hawk, Timothy J. Ryan, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

This case is currently before the Court on plaintiff Gwen McDaniel's November 13, 1989 Motion to Remand. Also before me is defendant General Motors Corporation's December 13, 1989 Motion to Transfer. This lawsuit was filed in September 1989 in Kalamazoo Circuit Court and removed by defendant in October 1989. The dispute here arises out of Gwen McDaniels' employment at General Motors Corporation ("General Motors").

## DISCUSSION

*Facts*

Plaintiff Gwen McDaniel was hired as a security guard at General Motors' Three Rivers plant in December 1980. At that time, the plant guards were not represented by a union. Plaintiff's Brief in Support, McDaniel Affidavit, ¶ 2 (Nov. 18, 1989). Plaintiff contends that she received assurances of job security from supervisors at General Motors which reasonably led her to believe that her employment was terminable only for good cause. *Id.*, McDaniel Affidavit, 6–7; Complaint, at ¶ 6. Plaintiff also alleges that she received handbooks and/or personnel policies which contained similar representations of job security. Complaint, at ¶ 4.

A union organizing drive took place at the Three Rivers plant during 1981 and 1983. Plaintiff's Brief in Support, McDaniel Affidavit, at ¶¶ 3–5. The union lost the election but prevailed in the second. During the course of the union campaign, General Motors officials gave speeches to the security guards during which they stated that the guards had job security and did not need the union. *Id.;* McDaniel Affidavit, at ¶ 4. In 1989, plaintiff was transferred from Three Rivers, Michigan to Milwaukee, Wisconsin to work at General Motors' A.C. Rochester plant. Plaintiff was the only female security guard regularly scheduled under the direct supervision of Larry Hoffer, a GM supervisor. Complaint, at ¶ 10. According to plaintiff, she was the target of constant harassment from Larry Hoffer. When her complaints about Larry Hoffer to GM management went unheeded, she requested a transfer. *Id.,* at ¶ 12. When her request to transfer to another General Motors plant was denied, plaintiff resigned from her employment on August 23, 1989 and moved back to the Kalamazoo, Michigan area.

On September 12, 1989, she filed a three count complaint alleging: I. sex discrimination in violation of the Elliott–Larsen Civil Rights Act; II. breach of her individual employment contract; and III. intentional infliction of emotional distress. The complaint contains no references to a collective bargaining agreement and, according to plaintiff, she does not rely upon the "just cause" provision of any collective bargaining agreement involving General Motors.

*Law*

Removal jurisdiction is governed by 28 U.S.C. § 1441 which provides in pertinent part that:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Thus only state court actions that first could have been filed in federal court may be removed by a defendant. *Id.; Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Without diversity of citizenship, federal question jurisdiction is required, thus the action must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether federal question jurisdiction exists is governed by the "well-pleaded complaint rule" which provides that jurisdiction exists where a federal question is presented on the face of plaintiff's complaint, when properly pleaded. *Caterpillar Inc.,* 482 U.S. at 392, 107 S.Ct. at 2429; *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). It is well-settled that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. *See Caterpillar Inc.,* 482 U.S. at 393, 107 S.Ct. at 2430; *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). On occasion, the Supreme Court has decided that the pre-emptive strength of a statute is so extraordinary that it "converts an ordinary state law common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).[1] The complete preemption corollary to the well-pleaded complaint rule is used most often in lawsuits that raise claims preempted by § 301 of the Labor Management Relations Act, which provides that:

---

**1.** *See, e.g., Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (state contract and tort claims completely preempted by §§ 502(a)(1)(B) and 502(f) of the Employee Retirement Income Security Act of 1974); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 675, 94 S.Ct. 772, 781, 39 L.Ed.2d 73 (1974) (state law complaint that alleges a present right to possession of Indian tribal lands necessarily "asserts a present right to possession under federal law," and is thus completely preempted and arises under federal law).

## § 185. Suits by and against labor organizations

### Venue, amount and citizenship

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

■ Indeed, state law does not exist as an independent source of private rights to enforce collective bargaining agreements. *Caterpillar Inc.*, 482 U.S. at 394, 107 S.Ct. at 2430; *Avco Corporation v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). Therefore, where the "heart" of a state law complaint is a clause in the collective bargaining agreement, that complaint arises under federal, not state, law. *Avco Corporation*, 390 U.S. at 558, 88 S.Ct. at 1236. The Supreme Court wrote in *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853, that:

> [T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

In 1987, the Supreme Court further refined the legal principles in this area, holding that a plaintiff's state law claims were not fully preempted by § 301. In *Caterpillar Inc.*, plaintiffs were former supervisors employed by defendant Caterpillar Inc. who were down-graded to non-management unionized positions. Plaintiffs alleged that during their employment as managers—at which time they were *not* covered by a bargaining agreement—defendant Caterpillar made "oral and written representations that 'they could look forward to indefinite and lasting employment with the corporation and that they could

count on the corporation to take care of them.'" 482 U.S. at 388, 107 S.Ct. at 2427 (quoting Complaint ¶¶ 27A, 27D, App. A–43). According to the Court, § 301 governs claims founded directly on rights created by collective bargaining agreements and claims substantially based upon an analysis of such bargaining agreements. Section 301 did *not*, however, preempt plaintiffs' allegations that the defendant employer breached *individual* employment contracts with plaintiffs. *Id.* at 394, 107 S.Ct. at 2430.

Like defendant here, Caterpillar Inc. asserted that plaintiffs' state law contract claims are completely and absolutely preempted § 301 claims. The Supreme Court in *Caterpillar Inc.* disagreed, saying:

> We disagree. Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' Respondents allege that Caterpillar has entered into and breached individual employment contracts with them. Section 301 says nothing about the content or validity of individual employment contracts. It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement and could have brought suit under § 301. As masters of the complaint however, they chose not to do so.

*Id.* at 394–95, 107 S.Ct. at 2431. In addition, the Court in *Caterpillar, Inc.* pointed out that:

> [The] complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address the relationship between the individual contacts and the collective agreement.

*Id.* at 395–96, 107 S.Ct. at 2431.

■ Therefore I find that—as did the plaintiffs in *Caterpillar, Inc.*—plaintiff in this case alleges that she received representations of job security during the more than two years that she was employed at

General Motors as a non-bargaining unit member—before plant security guards became unionized. Plaintiff claims that those representations created an actionable individual employment contract pursuant to *Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980).

Moreover, I am not convinced by defendant's argument that the existence of a collective bargaining agreement precludes the existence of a separate, individual contract covering matters addressed in the contract. *See* Brief in Opposition, at 3 (Nov. 28, 1989). In spite of language in the collective bargaining agreement which, during the time it was in effect, precluded discharge without cause, separate contract rights could have arisen from earlier conduct attributed to defendant.[2] The Court in *Caterpillar, Inc.* explicitly stated that "individual employment contracts are not inevitably superseded by any subsequent collective bargaining agreement covering an individual employee, and claims based on them may arise under state law." 482 U.S. at 396, 107 S.Ct. at 2431. Further, according to the Court, "defendant [Caterpillar]'s basic error is its failure to recognize that a plaintiff covered by a collective bargaining agreement is permitted to assert legal rights *independent* of that [collective bargaining] agreement, including state law contract rights, so long as the contract relied upon is *not* a collective bargaining agreement." *Id.*

I also do not agree with defendant General Motors's conclusion that the collective bargaining agreement provided a remedy for all types of disputes covered by her allegations here. Plaintiff points out that the bargaining agreement did not in fact cover supervisor harassment and provided no remedy for constructive discharge.

Thus in spite of defendant's attempt to recharacterize plaintiff's complaint to allege violations stemming solely from the collective bargaining agreement, I find that the essence of the state court contract alle-

gations need not look to the collective bargaining agreement as the source of the rights or a description of the parameters of those rights. Plaintiff rightfully makes this motion to remand, and I will issue an order granting her request. Defendant does not argue, nor do I believe the other two state law claims to be the source of federal question jurisdiction. *See Lingle v. Norge Division, Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (state law tort claim not preempted by § 301 if the underlying suit does not require reference to a collective bargaining agreement); *Smolarek v. Chrysler Corp.,* 858 F.2d 1165 (6th Cir.1988) (Michigan's Handicappers' Civil Rights Act not preempted by federal labor law); *Neumann v. International Union,* L88–145 CA5, slip. op., 1989 WL 201626 (W.D.Mich. Feb. 28, 1989) (intentional infliction of emotional distress claim under state law is not automatically preempted by state law).

With no basis for jurisdiction, then, it is proper for me to remand this matter to Kalamazoo Circuit Court. I will enter that order. In addition, defendant General Motors' Motion to Transfer will be denied as moot.

---

2. Indeed plaintiff argues that the crux of her complaint is based upon the oral and written representations of just cause employment that

were made prior to the time she was a union member.