**Thomas HABER, Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

**No. 6–CV–74608–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

March 20, 1997.

---

Ronald Reosti, Detroit, MI, for plaintiff.

Gregory Muzingo, Auburn Hills, MI, for Defendant.

*OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND ORDER REMANDING CASE TO WAYNE COUNTY CIRCUIT COURT*

ROSEN, District Judge.

## I. *INTRODUCTION*

Plaintiff Thomas Haber instituted this wrongful discharge action on November 20, 1995 in the Wayne County Circuit Court. Defendant Chrysler Corporation answered Plaintiff's complaint in January 1996. The action proceeded in the state court through discovery, and on August 6, 1996, Chrysler filed a motion for summary disposition to which motion, Plaintiff responded a month later, on September 12, 1996.

Chrysler contends that in Plaintiff's Response to its motion for summary disposition, Mr. Haber asserted "for the first time" a breach of contract claim "that directly implicates the [Chrysler–UAW] collective bargaining agreement." [Notice of Removal, ¶¶ 3–4.] Based upon this interpretation of Plaintiff's summary disposition response, on October 3, 1996, Chrysler removed Plaintiff's action to this Court alleging federal question jurisdiction on the basis of "complete preemption" of Plaintiff's complaint under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA").

On October 18, 1996, Plaintiff filed a Motion to Remand, arguing that Plaintiff's removal was untimely, and further arguing that Plaintiff's complaint is not preempted under the LMRA. Chrysler responded to Plaintiff's Motion on November 5, 1996.

Having had the opportunity to review and consider Plaintiff's Motion, Defendant's Response and the entire record of the case presented to this Court, the Court has determined that oral argument on Plaintiff's Motion is not necessary. Therefore, in accordance with Eastern District of Michigan Local Rule 7.1(e), Plaintiff's Motion will be decided "on the briefs." This Opinion and Order sets forth the Court's ruling on the matter.

## II. PERTINENT FACTS

Plaintiff Thomas Haber is a former non-union management employee of Chrysler Corporation. Mr. Haber actually began his career with American Motors Corporation ("AMC"), in 1972, as an hourly worker, represented by the UAW. He remained an hourly worker and union member through 1973. In late 1973, however, he was promoted by AMC to a salaried, non-union supervisory position at AMC's Kenosha, Wisconsin plant. He remained in that position until 1989, when he became a Chrysler employee following Chrysler's acquisition of AMC.

Shortly after the Chrysler–AMC merger, Chrysler closed the Kenosha plant. Mr. Haber then accepted a position at Chrysler's MOPAR Parts warehouse in Centerline, Michigan, which, like his previous AMC Kenosha, Wisconsin position, was a non-union, supervisory position. In 1991, he was moved to the Warren Distribution Center. His position in Warren, like his position in Centerline, was a non-union management position.

Mr. Haber worked at the Warren Distribution Center until 1995 when he was discharged for misconduct—the taking of unauthorized parts for personal use.

Haber subsequently filed the instant one-count lawsuit in Wayne County Circuit Court claiming that he was wrongfully discharged in violation of an alleged just cause contract.

## III. DISCUSSION

As indicated above, Plaintiff's wrongful discharge action proceeded in state court for nearly nine months. After completion of discovery, Defendant moved for summary disposition, contending that Plaintiff's employment with Chrysler was terminable "at-will". In its brief in support of its motion for summary disposition, Chrysler argued that Plaintiff could not identify any documents or any oral representations which would support his claim of an employment contract terminable for cause, only.

In Response to Chrysler's summary judgment motion, Plaintiff contradicted Defendant's assertion of absence of evidence supporting his "just cause" claim, and, citing several excerpts from his deposition testimony, Plaintiff argued that he was not only relying upon a "legitimate expectation" of termination for cause only, but was also relying "on the express agreement that he could return to the bargaining unit if Chrysler was dissatisfied with his performance as a salaried employee." [Summary Disposition Response Brief, p. 3.] Plaintiff claimed that he was specifically told when he was promoted from his hourly union position to a salaried position when he was with AMC that he could return at any time to the hourly work force. He further argued that, "[a]lthough Plaintiff's contract was originally made with AMC, Chrysler is bound by that contract because it is the successor to AMC and has the same policy with regard to salaried employees being allowed to return to the bargaining unit." [Summary Disposition Response Brief, p. 6.] In support of this contention, Plaintiff quoted from pages 57 and 98–99 of his May 30, 1996 deposition testimony.

The examination of Plaintiff at page 57 of his deposition was as follows:

Q: [by counsel for Chrysler] ... [D]id you have any conversations with anybody in Chrysler management that specifically dealt with whether your employment, you being Mr. Haber, was terminable at will or with just cause.

A: [by Mr. Haber] I don't know, I really don't know.

Q: Are there any documents or is there anything that might refresh your memory with respect to that?

A: *All I know that in the hourly working agreement there's a paragraph that states you can return to the hourly work force from salary and management positions, that I know.*

[Haber 5/30/96 Dep. p. 57.]

His deposition continued as follows:

Q: [by counsel for Chrysler] But you are not a member, at the time you were employed at Chrysler you were not a member of the UAW, you were not a member or covered by the collective bargaining agreement, correct?

[Objection by Plaintiff's counsel]

Q: You're not a member of the hourly work force?

A: No, *but I could return to the hourly work force....*

[Haber Dep. p. 57.]

At pages 98–99 of his deposition, Plaintiff testified that he was expressly told when he first moved to management from the hourly ranks that he could return to the hourly work force:

Q: *When you went from an hourly worker to a salaried worker back when you were at American Motors * * * did you ask and were you told at the time. did you ask at that time whether or not you could go back to being an hourly worker?*

A: *Yes....*

Q: *What were you told?*

A: *That you could return at any time or they could return you, you know. at any time ... to the hourly work force.*

Q: Did you feel that that provided you with job security?

A: Yes.

[Haber Dep. pp. 98–99]

In his response to the motion for summary disposition, Plaintiff further indicated that his understanding of the terms and conditions applicable to his employment as a salaried employee was consistent with the testimony of Chrysler's personnel director. [Response Brief, p. 4.] As Plaintiff pointed out in his response, "Mr. [Cody] Cooper, the Group Personnel Director,.. testified in his [June 1996] deposition that the right of salaried employees to return to the bargaining unit was, in his opinion, contingent on Chrysler's discretion." *Id. See also* Cooper Dep. pp. 19, 24–25 (attached as an exhibit to Plaintiff's summary disposition response brief).

Mr. Cooper's testimony on this issue was as follows:

Q: If an hourly employee ... covered by a UAW contract is promoted to a salaried position, does that employee have the right to return to the hourly ranks?

A: I don't believe he has the right, but there's an opportunity that would allow us to do that if we chose.

Q: So under the contract with the UAW, the UAW would accept the person back as an hourly employee?

A: Under certain terms, yes.

Q: What terms?

A: There would be definitions in terms of the amounts of seniority they would return depending on the dates that they had transferred to the salaried rank....

Q: What if a salaried, employee—I'm sorry, a non-represented employee was unhappy in their salaried or non-represented position and wanted to return to a represented position?

A: In the vast majority of cases, if they had an acceptable record and there wasn't [sic] any considerations that we were worried that they would be an abuser or use their previous experience to our detriment, then most of those requests would be agreed and they would be returned to a bargaining unit provided their seniority allowed them to do that.

\* \* \* \* \* \*

Q: I think your earlier testimony was that unless there was some compelling reason to say no, your practice or—

A: The vast majority.

Q: —was to allow them?

A: Yes.

Q: In fact, when people are recruited from the hourly ranks or the represented ranks to go into salaried positions they're told that they have they have the opportunity to return to hourly or represented positions; isn't that true?

A: I don't know that the word opportunity is [used]—they're told that they have contractual abilities to take their seniority back in these instances if we decide they can go back, that's my understanding of what they are told.

[Cooper Dep. pp. 19, 24–27.]

Mr. Cooper also testified regarding Chrysler's policy regarding termination of long service employees and testified that Plaintiff was covered by this policy.

Plaintiff argued that the statements made to Plaintiff by company management coupled

with Chrysler's policies regarding long term employees and returning salaried employees to the hourly work force *was sufficient to establish an **express agreement** for just cause employment* under recent Michigan Court of Appeals decisions. *See* Response Brief, pp. 7–8.

Relying upon Mr. Haber's and Mr. Cooper's deposition testimony, Plaintiff disputed Defendant's summary disposition argument that his claim of just cause employment lacked evidentiary support, and argued that summary disposition should be denied because he claimed he had sufficient evidence of an "express agreement" that he could return to the bargaining unit rather than being fired: "There is certainly no reason to doubt Mr. Haber's testimony that he was specifically told that he would be continued to be protected against arbitrary discharge, i.e., discharge[d] *without cause*, by virtue of being guaranteed that he could return to the bargaining unit." [Plaintiff's Response Brief, p. 5.]

Ignoring the full context of Plaintiff's "express agreement" theory in opposing summary disposition, Chrysler focuses instead only on the introductory paragraph of Plaintiff's argument, that "[c]ontrary to Defendant's assertion, Plaintiff's wrongful discharge claim is not based solely or primarily on an legitimate expectation theory; *Plaintiff relies on the express agreement that he could return to the bargaining unit if Chrysler was dissatisfied with his performance as a salaried employee,*" and the quotation of one sentence from Plaintiff's deposition immediately following that introductory paragraph in which Plaintiff stated that he believed that "in the hourly agreement there's a paragraph that states you can return to the hourly work force from salary and management positions". It is based exclusively upon these two sentences from Plaintiff's response brief that Chrysler has removed Plaintiff's action to this Court contending that it was not until "plaintiff filed his response [to Chrysler's motion for summary disposition] on September 12, 1996, [that], for the first time, that asserted a breach of contract claim that *directly implicates the collective bar-*

*gaining agreement.*" (Emphasis added.) Because a collective bargaining agreement is "implicated", Chrysler contends that Plaintiff's wrongful discharge claim is completely preempted under Section 301 of the LMRA.

## A. *DEFENDANT'S REMOVAL OF THIS ACTION WAS NOT TIMELY*

28 U.S.C. § 1446(b) prescribes the time limits for removing an action. With respect to removals of actions where the initial pleading does not render the case removable, Section 1446(b) provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

▉ Plaintiff argues that his reliance upon the collective bargaining agreement was clearly stated at his May 30, 1996 deposition when he testified, "All I know is that in the hourly working agreement there is a paragraph that states you can return to the hourly work force from salary and management positions, that I know." [Haber Dep. p. 57.] Therefore, he argues that this action, if removable at all, had to have been removed no later than 30 days after his deposition, i.e., by June 30, 1996.

Chrysler argues that Plaintiff's deposition could not trigger the running of the 30–day removal period because it contends that a deposition does not constitute an "amended pleading, motion, order or *other paper*" under § 1446(b). In support of this contention, Chrysler relies upon two Fifth Circuit district court cases, *Campos v. Housland, Inc.,* 824 F.Supp. 100 (S.D.Tex.1993), and *Rivers v. International Matex Tank Terminal,* 864 F.Supp. 556 (E.D.La.1994). Although Defendant concedes that "*some* district courts have held that a deposition [does] constitute[ ] 'other paper' within the meaning of 28 U.S.C. § 1446(b)", it contends that the view of the *Campos* and *Rivers* courts represents the view of "the majority of district courts".[1]

---

**1.** In addition to *Campos* and *Rivers,* Defendant also cites *DeBry v. Transamerica Corp.,* 601 F.2d

To the extent that Defendant believes that the majority of courts take the position that a deposition does not constitute "other paper", Defendant is mistaken. In fact, the view of the majority of courts that have considered this issue is just the opposite—the majority view is that a deposition can constitute an "other paper" for purposes of the removal statute. *See, Riggs v. Continental Baking Co.*, 678 F.Supp. 236 (N.D.Cal.1988); *Zawacki v. Penpac, Inc.*, 745 F.Supp. 1044, 1047 (M.D.Pa.1990); *Turner v. Wilson Foods Corp.*, 711 F.Supp. 624 (N.D.Ga.1989); *Ezon v. Cornwall Equities, Ltd.*, 540 F.Supp. 885 (S.D.Tex.1982); *Brooks v. Solomon Co.*, 542 F.Supp. 1229 (N.D.Ala.1982); *Fisher v. United Airlines, Inc.*, 218 F.Supp. 223 (S.D.N.Y. 1963); *Fuqua v. Gulf Colorado & Santa Fe Ry. Co.*, 206 F.Supp. 814 (E.D.Okla.1962); *Gilardi v. Atchison, Topeka & Santa Fe Ry. Co.*, 189 F.Supp. 82 (N.D.Ill.1960).

■ This court agrees with the majority of courts and finds that a plaintiff's responses to deposition questioning is no different than a plaintiff's responses to written discovery requests, and it is well-settled that where a plaintiff makes a disclosure in discovery responses which reveals that a case is removable, the defendant has thirty days from that disclosure to remove. *See, e.g., Miller v. Stauffer Chemical Co.*, 527 F.Supp. 775 (D.Kan.1981) (timeliness of removal determined from plaintiff's disclosure of federal jurisdiction in answers to interrogatories); *Smith v. International Harvester, Co.*, 621 F.Supp. 1005 (D.Nev.1985); *Booty v. Shoney's Inc.*, 872 F.Supp. 1524 (E.D.La.1995). *See also, Lee v. Altamil Corp.*, 457 F.Supp. 979 (D.Fla.1978) (discovery documents revealing that amount in controversy exceeded jurisdictional amount constituted "other papers" under § 1446(b)). Deposition responses are no less voluntary than written discovery responses.

This construction of "other paper" is consistent with the policy underlying § 1446(b) that a defendant who seeks to take advantage of the limited jurisdiction of the federal court do so as soon as he receives notice of removability. Thus, defendants are not permitted to "sit idly" while the statutory 30–day removal period runs and "squander both judicial resources and the resources of his adversary". *Kaneshiro v. North American Company for Life and Health Ins.*, 496 F.Supp. 452, 457 (D.Hawai'i 1980). Indeed, a number of courts have held that a defendant has an affirmative duty to make reasonable inquiry to ascertain the existence of federal jurisdiction and pursue "clues" of potential federal jurisdiction as soon as they are uncovered. *See, e.g., Central Iowa Agri–Systems v. Old Heritage Advertising & Publishers, Inc.*, 727 F.Supp. 1304, 1305 (S.D.Iowa 1989).

For all of these reasons, the Court rejects Defendant's argument that Plaintiff's deposition cannot constitute "other paper" for purposes of triggering the 30–day time limit for removal under 28 U.S.C. § 1446(b).

Defendant also makes a secondary argument in a footnote that even if the Court were inclined to view "other paper" to encompass deposition testimony, it could not be ascertained from Plaintiff's deposition in this case that the action was removable because Plaintiff did not make it clear in his deposition that he was asserting a breach of contract claim which "implicates" the collective bargaining agreement because he did not make it clear at his deposition that was asserting a right to return to a position covered under the collective bargaining agreement. The Court disagrees. As indicated above, Plaintiff did testify that he was told when he moved to management that he could return to the hourly work force at any time and he did testify that he knew that the Chrysler–UAW collective bargaining agreement provided for the return of management/salaried employees to the hourly work force. Plaintiff's summary judgment response brief does no more than re-cast this testimony as evi-

480 (10th Cir.1979) contending that the Tenth Circuit is among the majority of courts which have determined that depositions do not constitute "other paper" for purposes of removal under § 1446(b). However, the court in *DeBry* did not make such a definitive ruling with respect to depositions. Rather, the court made very clear in *DeBry*, "We are not taking the position that a deposition is incapable of furnishing notice [of removability]. We merely say that *this* deposition ... was not adequate notice...." 601 F.2d at 488.

dence of an "express agreement" that he could return to the bargaining unit if Chrysler became dissatisfied with his performance as a supervisor. Therefore, to the extent that this case is removable at all, for removal to have been timely, Chrysler would have had to have removed it within 30 days of Plaintiff's deposition, i.e., on or before June 30, 1996. Since the case was removed until October 3, 1996, removal was not timely.

## B. *EVEN IF REMOVAL WAS TIMELY, REMOVAL ON THE BASIS OF COMPLETE PREEMPTION UNDER THE LMRA WAS NOT PROPER.*

■ Even if the Court were to deem removal based upon Plaintiff's assertions in his brief in response to Defendant's state court motion for summary disposition to be timely, the fact that Plaintiff's claim of breach of an "express agreement" in that brief "implicates" the Chrysler–UAW collective bargaining agreement does not render this action removable under Section 301 of the LMRA.

Generally, to determine whether a claim arises under federal law and is thus removable, a court applies the "well-pleaded complaint" rule and normally looks only to the plaintiff's complaint. *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable.

However, the Supreme Court has developed an exception to the well-pleaded complaint rule. If Congress intends that a federal statute "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). It is now well-settled that the Labor Management Relations Act, 29 U.S.C. § 185(a), is one such statute intended by Congress to have comply preemptive force. *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 559–60, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). *See also, Franchise Tax Board v. Construction Laborers*

*Vacation Trust,* 463 U.S. 1, 23–25, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Section 301 of the LMRA provides:

Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations, may be brought in an district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

However, as the Supreme Court stated in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), "not every dispute tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301." 471 U.S. at 211, 105 S.Ct. at 1911. It is only if resolution of a state law claim requires the interpretation of a collective bargaining agreement that the state law claim is preempted. *Lingle v. Norge Division of Magic Chef Inc.,* 486 U.S. 399, 411–13, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). When liability is governed by independent state law, the mere fact that a collective bargaining agreement will be consulted or referred in the course of state-law litigation does not require the claim to be extinguished under Section 301. *Livadas v. Bradshaw,* 512 U.S. 107, 122–26, 114 S.Ct. 2068, 2078–79, 129 L.Ed.2d 93 (1994).

As indicated above, Defendant Chrysler's removal of the instant action on a theory of complete preemption under Section 301 was predicated upon its assertion that, in claiming a breach of an "express agreement" in opposing summary disposition of his *Toussaint* breach of employment contract claim, Plaintiff Haber "implicated" the Chrysler–UAW collective bargaining agreement. That a collective bargaining agreement may be "implicated" is not tantamount to "requiring interpretation" of the agreement. As the Supreme Court stated in finding no Section 301 preemption in *Livadas,* "[W]hile th[e] sensible 'acorn' of § 301 pre-emption recog-

nized in *Lucas Flour*[2] has sprouted modestly in more recent decisions, it has not yet become, nor may it, a sufficiently 'mighty oak' to supply the cover the [defendant] seeks here." 512 U.S. at 122, 114 S.Ct. at 2077 (citations omitted).

The Court is further persuaded that Section 301 preemption should not operate to bar Mr. Haber's claim in this case because Mr. Haber was not a UAW member at the time of his discharge; he had not been a member of the union since 1973. Therefore, he was not covered by the Chrysler–UAW collective bargaining agreement.

The Supreme Court has repeatedly emphasized that the purpose underlying the doctrine of complete preemption under Section 301 is to preserve the effectiveness of collectively-bargained arbitration. *See, Lingle v. Norge Division of Magic Chef, supra,* 486 U.S. at 411, 108 S.Ct. at 1884; *Allis–Chalmers v. Lueck, supra,* 471 U.S. at 219, 105 S.Ct. at 1915. *See also, Livadas v. Bradshaw, supra,* (§ 301 is accorded broad preemptive effect "in large part to assure that agreements to arbitrate grievances would be enforced...." 512 U.S. at 122, 114 S.Ct. at 2077.) Not being covered by the collective bargaining agreement, Mr. Haber is not required—nor does he have the right—to have his claim arbitrated as provided in the CBA.

Plaintiff in this case is in a position substantially similar to the position of the plaintiff in *McTighe v. Mechanics Educational Society of America, Local 19 AFL–CIO,* 772 F.2d 210 (6th Cir.1985). In that case, the plaintiff, Thomas McTighe, attempted to bring a hybrid Section 301 action against his former employer, National Acme Company, and the local union which represented National Acme's hourly employees.

McTighe had been originally hired by National Acme as a machine tool operator. As a machine tool operator, McTighe was represented by the Mechanics Educational Society of America, Local 19, AFL–CIO. After

working for 12 years as a machine tool operator, McTighe accepted a supervisory position with the company. He worked in that supervisory position, which was not covered by the collective bargaining agreement, for four years, until 1982, when the company terminated his employment as a result of a general reduction in force due to economic conditions.

Alleging federal jurisdiction under § 301 of the LMRA, McTighe subsequently filed a lawsuit in the U.S. District Court for the Northern District of Ohio against his employer and Local 19 claiming that because of his prior seniority of 12 years as a member of the collective bargaining unit, he was protected by certain terms and conditions of the collective bargaining agreement. Specifically, McTighe argued that when the National Acme terminated him from his supervisory position, it should have permitted him to return to the collective bargaining unit in his previous machine tool operator position.

As the basis for his claim against his former employer, McTighe relied upon the following seniority provision in the collective bargaining agreement:

> When an employee covered by this Agreement has been or is in the future elevated to a salaried supervisory position or the salaried position of Servicer–Demonstrator which classifications are excluded from this Agreement, his/her seniority shall be frozen as of the time of such elevation, and the Company's personnel records will be marked accordingly, and should the employee be returned to a position which is covered by this Agreement, he/she shall pick up the seniority he/she had at the time it was frozen. This is to be retroactive with respect to all present salaried supervisory and Servicer–Demonstrator employees.

772 F.2d at 212.[3]

Agreeing with the district court, the appellate court determined that this provision pro-

---

**2.** *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

**3.** The Chrysler–UAW collective bargaining agreement provision Plaintiff Haber relies upon in this case is a "seniority preservation" provision that
is substantially similar to the provision relied upon by the plaintiff in *McTighe.* Contrary to Plaintiff's assertions, this provision provides no "right" to return to hourly status; it merely

vided McTighe with no contractual "right" to return to position within the bargaining unit: "This provision merely provides that should the company elect to return plaintiff, or someone in similar circumstances, to his original job, he would maintain the seniority he had acquired prior to his promotion." 772 F.2d at 212. The court continued, "If the Company had returned supervisory personnel to positions within the unit, ... it was done as an exercise of discretion and not as a mandatory requirement of the agreement." *Id.*[4]

In this case, as Plaintiff Haber expressly acknowledged in his Brief in Response to Chrysler's Motion for Summary Disposition—i.e., the very brief that Chrysler relied upon in removing this action on the basis of complete preemption under Section 301— Chrysler's Group Personnel Director, Cody Cooper testified in his deposition that whether a salaried employee could return to the bargaining unit is a matter wholly *"contingent on Chrysler's discretion."* [See Plaintiff's Response Brief, p. 4; Cooper dep. p. 19.]

The foregoing discussion thus makes clear that to hold Mr. Haber's claim in this case preempted—which it necessarily would have to do as an initial matter in order to find

removal proper under the "complete preemption" doctrine—would not further the purpose underlying Section 301 to preserve the effectiveness of collectively-bargained arbitration. Indeed, if the Court were to hold that Mr. Haber's claim is preempted, it would, in effect, be holding that Mr. Haber has no remedy whatsoever, because it would not only be denying him the right to a judicial remedy, but also, because Mr. Haber is not covered under the collective bargaining agreement, he has no right to arbitrate his dispute, and, therefore, he would be left with no extra-judicial remedy, either.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand be, and hereby is, GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case be REMANDED to the Wayne County Circuit Court.

preserves a promoted employee's seniority. It provides as follows:

**(52) Seniority of Employees Promoted to Salary**

(a) —If an hourly employee is promoted to a non-supervisory salaried position and is thereafter transferred to a position as an hourly employee, he shall accumulate seniority while working in the salaried position and when so transferred, shall commence work as an hourly employee with the seniority ranking he had at the time of his promotion plus the seniority accumulated while he was working in the salaried position.

(b) —If an hourly employee is promoted to assistant foreman or to any other supervisory position and is thereafter transferred to a position as an hourly employee, he shall commence work as an hourly employee with the amount of seniority he had at the time of his promotion plus the amount of seniority, if any, accumulated while he was working in the supervisory position prior to March 1, 1977.

(c) —Within ninety (90) days following written notice of ratification of this Agreement, the Chairman of the Plant Shop committee will be provided with a current list of employees pres-

ently on supervision who were promoted to such position from an hourly position after March 1, 1977. Thereafter, every ninety (90) days, the Chairman of the Plant Shop Committee will be provided with a list of names, department numbers and seniority dates of employees who had been promoted from an hourly position to a supervisory position or who transferred from a supervisory position to an hourly position during the preceding ninety (90) days.

4. In marked contrast, the collective bargaining agreement provision relied upon by the plaintiffs in *Woosley v. Avco Corp.,* 944 F.2d 313 (6th Cir.1991) expressly provided that a supervisor *"shall be entitled to return* to his last occupation in the bargaining unit...." *Id.* at 317. The *Woosley* court found that this language indicated that supervisory personnel who were previously hourly workers had an absolute "right" to return to the collective bargaining unit upon request, and therefore, the invasion of this legal right provided the plaintiffs with standing to sue under the agreement. *Id.* As indicated above, the Chrysler–CBA contains no similar mandatory language.