MILL–BERN ASSOCIATES,
INC., Plaintiff

v.

DALLAS SEMICONDUCTOR CORPO-
RATION; Gregory Cappelli; and Wil-
liam Galluccio, Defendants.

No. CIV.A.98–11348–GAO.

United States District Court,
D. Massachusetts.

Sept. 21, 1999.

Francis A. Mooney, McLaughlin, Moo-
ney & Associates, Wellesley, MA, Edward
J. Byrnes, Woburn, MA, for Plaintiff.

Joan A. Lukey, Hale & Dorr, Boston,
MA, for Defendants.

*MEMORANDUM AND ORDER*

O'TOOLE, District Judge.

Mill–Bern Associates, Inc. ("Mill–
Bern"), a Massachusetts corporation,
brought this action in the Massachusetts
Superior Court against Dallas Semiconduc-
tor Corporation ("Dallas"), a Texas corpo-
ration, and two individual employees of
Dallas: Gregory Cappelli, a resident of
New York, and William Galluccio, a resi-
dent of Massachusetts. The defendants,
commonly represented, answered in the
state court, stating in one of their affirma-
tive defenses their belief that Galluccio,
the Massachusetts resident, had been add-

ed to the lawsuit for the sole purpose of defeating diversity jurisdiction.

On June 23, 1998, the defendants conducted a deposition of a witness designated by Mill–Bern pursuant to Fed.R.Civ.P. 30(b)(6). The defendants contend that the witness's testimony revealed that Mill–Bern had no viable claims against Galluccio. As a result of the deposition, they concluded that their suspicions about Galluccio's joinder as a defendant had been confirmed. Consequently, on July 10, 1998, the defendants filed a notice of removal pursuant to 28 U.S.C. §§ 1441(b) and 1446(b), asserting that but for the fraudulent joinder of Galluccio, there would be complete diversity of citizenship between the plaintiff and the other defendants, giving the Court jurisdiction under 28 U.S.C. § 1332 and qualifying the case for removal.

After the case was entered in this Court, the plaintiff moved to remand. Essentially, Mill–Bern makes two arguments in favor of its motion. First, it says the case was not properly removed, because the removal notice was filed more than thirty days after the service of the complaint and no event has occurred that extended or renewed that time limit. *See* 28 U.S.C. § 1446(b). Second, the plaintiff argues that the claims asserted against Galluccio could not be held to be meritless on the basis of a single deposition when there is more discovery to be conducted by both sides, *cf.* Fed.R.Civ.P. 56(f), and that, in any event, the fact that the claims against Galluccio may not succeed is not an adequate basis for concluding that Galluccio was named as a defendant solely to defeat diversity.

### A. *Timeliness*

Ordinarily, a case must be removed within thirty days after the defendant has received the "initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b). If the case is not removed within this time, the right to remove expires. However, a case that is not originally removable might, in the course of proceedings, become removable. The second paragraph of § 1446(b) provides for this later opportunity to remove:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, . . .

The defendants seek to take advantage of this second opportunity. On its face, Mill–Bern's complaint did not present a removable case because there was not complete diversity between the plaintiff and all defendants. The defendants argue that the June 23rd deposition first revealed the suit's removability by demonstrating that the claims asserted against Galluccio were baseless. Since the defendants filed notice of removal within thirty days of the deposition, removal should be proper under § 1446(b). To succeed on this theory, the defendants must show not only that the content of the deposition made the case removable, but also that the deposition was the kind of "other paper" that may renew an otherwise expired right of removal. In the defendants' view, the deposition, or at least the written transcript of it, qualifies as an "other paper."

There is no authoritative support for the defendants' theory in this circuit. However, courts elsewhere have held that deposition testimony may constitute an "other paper." *See, e.g., S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996) (concluding that transcript of deposition testimony is "other paper" permitting removal under § 1446(b)); *Haber v. Chrysler Corp.,* 958 F.Supp. 321, 326–27 (E.D.Mich. 1997) (concluding that deposition itself was "other paper" triggering time for removal, so that attempted removal more than thirty days after date of deposition was untimely).

■ Such cases seem to take the view that the term "other paper" in § 1446(b) should be given "an embracive construc-

tion" to include "a wide array of documents." *See* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3732, at 300, 306 & n. 28 (3d ed.1998). That is a doubtable proposition. As a general matter, the removal statutes are to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *American Home Assurance Co. v. Insular Underwriters Corp.,* 494 F.2d 317, 319 (1st Cir. 1974); *Santiago v. Barre Nat'l, Inc.,* 795 F.Supp. 508, 510 (D.Mass.1992). Strict construction would seem to call for giving a narrower, rather than a broader, interpretation to the scope of the words "other paper" in § 1446(b).

■ Moreover, whether "other paper" is expansively or narrowly construed as a general matter does not determine whether a particular case will be removable. Removability is determined by the peculiar facts of each case. In one case, an expansive interpretation may lead to a conclusion that removal was timely, while in another case, where the timing and sequence of events is different, the same expansive interpretation may lead to a conclusion of untimeliness. *See Rahwar v. Nootz,* 863 F.Supp. 191, 192 (D.N.J.1994) (on more expansive interpretation, removal timely and jurisdiction upheld); *Central Iowa Agri–Sys. v. Old Heritage Advertising and Publishers,* 727 F.Supp. 1304, 1305–06 (S.D.Iowa 1989) (on more expansive interpretation, removal untimely and case remanded); *Harrell v. Reynolds Metals Co.,* 599 F.Supp. 966, 968 (N.D.Ala.1985)(on stricter interpretation, removal untimely and case remanded); *Gottlieb v. Firestone Steel Prods. Co.,* 524 F.Supp. 1137, 1139 (E.D.Pa.1981) (on stricter interpretation, removal timely and jurisdiction upheld).

The variety of outcomes suggests that courts may sometimes be tempted by the prospect of an appealing result to choose the mode of interpretation of § 1446(b)— strict or expansive—that will lead to that result. Indeed, some courts have explicitly justified their mode of interpretation by the desirable policy end it serves. *See Haber,* 958 F.Supp. at 326; *Brooks v. Solomon Co.,* 542 F.Supp. 1229, 1230–31 (N.D.Ala.1982). However, because a chosen mode of interpretation will not itself determine whether the case has been timely removed or not, policy cannot justify choosing either a strict or an expansive interpretation of the words "other paper."

■ The better approach is simply to construe the words "other paper" according to the customary canons of statutory interpretation, without worrying how the construction is characterized. The canon of first resort is that the words of the statute should be given their "plain meaning." *See Couvertier v. Gil,* 173 F.3d 450, 452 (1st Cir.1999). Application of this canon eliminates the idea that an "other paper" need not be a paper at all. *See Gottlieb,* 524 F.Supp. at 1139. *But cf. Haber,* 958 F.Supp. at 327 (deposition testimony itself was "other paper"); *Poole v. Western Gas Resources,* Civ. A. No. 97–2929, 97–3035, 1997 WL 722958, at *2 (E.D.La. Nov.18, 1997) ("This Court finds no functional difference between a deposition and a transcript of a deposition for purposes of the removal statute."). In their ordinary meaning, the words "other paper" suggest a document of some kind, not just an oral transmittal of information.

■ The defendants here do not take the extreme position that the oral deposition itself was the "other paper." Rather, they contend that their receipt of the written transcript of the deposition renewed their opportunity to remove the case. A second canon of construction, *ejusdem generis,* requires consulting the context in which the words appear for help in understanding the meaning to be given them. The words "other paper" are part of a series: "amended pleading, motion, order or other paper." Following as they do three specific terms, the general words "other paper" should be understood to describe something that shares some common characteristic or quality with the other terms in the series. *See Berniger v.*

*Meadow Green–Wildcat Corp.*, 945 F.2d 4, 8 (1st Cir.1991); *Macaulay v. Boston Typographical Union, No. 13*, 692 F.2d 201, 204 (1st Cir.1982). The first three terms in the series—amended pleading, motion, order—each describe a document that serves a relatively formal purpose in the litigation and is formally filed and/or served on the parties.[1] It is easy to conclude that a "paper" that shares those characteristics—a filed affidavit, for example—falls within the scope of the phrase. Is it just as acceptable to understand the phrase to encompass "papers" that are not similarly filed or served?

Another way of putting the question is to ask which of the two following rephrasings of the series expressed in the statute better captures the intended meaning: (A) "amended pleading, motion, order or other *similar* paper;" or (B) "amended pleading, motion, order or other paper *of any kind.*" The second choice places no limit on what might qualify as an "other paper," and is broad enough to encompass the daily newspaper or any other casual writing. Even if it were granted that a "paper" must have some relation to the case, the second phrasing could still be understood to include such informal "papers" as correspondence, documents examined in the course of discovery, and perhaps even reported cases.[2] Oral communications, themselves not qualifying, could be simply reduced to writing and become a "paper." Thus, a deponent's answers might be transcribed and qualify. So would information given to an insurance investigator and memorialized in a written memorandum. Practically speaking, alternative (B) is equivalent to saying that the time for removal would restart after a party had received an "amended pleading, motion, order or *other information in written form*" indicating removability.

One problem immediately apparent with this construction of "other paper" is that it makes the first three words in the series superfluous. More likely, the drafters expressed three examples of papers that would trigger a new opportunity to remove as a way of describing the kinds of papers they had in mind. "Other paper" is not merely some "other written-down information." Rather, an "other paper" is one that somehow matches and fits with the preceding "papers" listed, because it is similar to them. *See Berniger*, 945 F.2d at 8–9; *Macaulay*, 692 F.2d at 204.

This interpretation is further supported by the fact that the term "paper" is commonly used in the Rules of Civil Procedure to refer to a variety of documents that are formally filed and served. *See, e.g.*, Fed. R.Civ.P. 5(d) ("All *papers* after the complaint required to be served upon a party, together with a certificate of service, shall be filed with the court ...."); 6(e) ("Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or *other paper* upon the party and the notice or *paper* is

---

[1] A party may receive notice of the paper "through service or otherwise." 28 U.S.C. § 1446(b). Among other things, this indicates that, while a "paper" might be required to be served, the running of the removal time period does not await formal service. Thus, for example, if the plaintiff files an amended complaint and sends a courtesy copy to the defendant, the time for removal starts from the informal receipt of the pleading rather than with the formal receipt by service. The same provision pertains to the defendant's receipt of the initial pleading. *See* 28 U.S.C. § 1446(b). *Cf. Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). The provision only has significance with respect to "papers" that

need to be served. I do not read this provision, as some have, as implicitly suggesting that papers that do not require service must be included within the term "other paper." If such papers were included, it would not be necessary to provide that notice of the removability could be received "by service or otherwise;" that would be obvious.

[2] Some courts have adopted this broad approach. *See Rahwar*, 863 F.Supp. at 192 (informal statement of damages is "other paper"); *Broderick v. Dellasandro*, 859 F.Supp. 176, 179–80 (E.D.Pa.1994) (letter from counsel); *Hessler v. Armstrong World Indus.*, 684 F.Supp. 393, 394–95 (D.Del.1988) (same).

served upon the party by mail, 3 days shall be added to the prescribed period."); 7(b)(2) ("The rules applicable to captions and other matters of form of pleadings apply to all motions and *other papers* provided for by these rules."); 11(a) ("Every pleading, written motion, and *other paper* shall be signed by at least one attorney of record ...."); 77(a) ("The district courts shall be deemed always open for the purpose of filing any pleading or *other proper paper* ....").

■ Under Massachusetts rules of procedure deposition transcripts are not required to be filed with the court or served on other parties. *See* Mass. R. Civ. P. 5(a), (d)(2) (West 1999). In practice, a party ordinarily obtains a transcript by purchasing it from the court reporter. Except that it is written and is related to the case in litigation, a transcript of deposition testimony does not share common defining characteristics with an amended pleading, a motion, or a court order. If, to qualify under § 1446(b) as an "other paper," a document must be similar to one of those formal "papers," then a deposition transcript does not qualify.

This solution is not without its drawbacks. It is to some degree artificial; it excludes some "papers" that are, as a practical matter, the way parties may learn about whether a suit may be subject to removal. On the other hand, an artificial line is often, as here, a distinct line, and distinct lines are easy to follow. *See Smith v. Bally's Holiday,* 843 F.Supp. 1451, 1455 (N.D.Ga.1994); *Gottlieb,* 524 F.Supp. at 1140 ("Defendants should not be required to 'guess' when a case becomes removable."). There is a value—not just to defendants—in being able to tell with some assurance what kind of event (or "paper") will trigger a renewed thirty-day opportunity for removal.

In sum, I conclude that the receipt by the defendants of the transcript of Mill–Bern's Rule 30(b)(6) deposition did not authorize the removal of the case from the state court under the second paragraph of § 1446(b). Consequently, the case was un-timely removed and must be remanded to the state court.

### B. *Fraudulent Joinder*

■ As a separate reason for remanding the case, I also conclude that the defendants have not established, as it is their burden to do, that Galluccio was fraudulently joined.

Mill–Bern presses three claims arising under Massachusetts law against Galluccio: intentional interference with contractual and advantageous relations, intentional interference with prospective contractual and advantageous relations, and unfair or deceptive business acts or practices in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11. The defendants' contention is that the Mill–Bern deposition under Rule 30(b)(6) revealed to them that the plaintiff is unable to offer admissible evidence to prove any of the claims against Galluccio. Since there is no hope that a judgment against Galluccio could be obtained, they argue, the inference should be drawn that he is named in the suit only as a device to avoid federal jurisdiction.

The defendants do not contend that the complaint fails to allege claims, which, if proven, would lead to a judgment against Galluccio. Their argument is only that the claims, potentially viable on their face, cannot be proven.

The defendants say that the plaintiff lacks admissible evidence that would prove the claims. That proposition cannot be established on the basis of a single deposition. The defendants assert, for example, that the deponent was able to support the allegations that Galluccio attempted to interfere with Mill–Bern's relationships with its employees and clients only by repeating "multiple layers of hearsay." Defs.' Mem. Oppos. Pl.'s Mot. for Remand, at 14. But all that means is that the *deponent* could not be the source of the admissible evidence for those matters, and not that the *plaintiff* would be unable, through sources other than the deponent (such as the origi-

nal source of the "hearsay"), to offer evidence that would be admissible to prove the necessary facts.

The deposition in question occurred shortly after the suit was filed. There is, presumably, further discovery to be taken by the parties. It would be a hasty, not to say reckless, judgment to jump to the conclusion that the plaintiff will be unable to develop evidence in support of its well-pleaded allegations on the basis of a single deposition. If the issue now before me were presented on a motion for summary judgment under Rule 56, there can be little doubt that the plaintiff would be able to object successfully that no decision should be rendered until it had had an adequate opportunity to conduct its own discovery. *See* Fed.R.Civ.P. 56(f).

The plaintiff's allegations against Galluccio are the kind that are typically proven by evidence from a variety of sources about activities that occurred over a course of time. One could imagine a case where a defendant's liability depended entirely on proof of a relatively discrete act or event, such as whether the defendant had signed a promissory note. In contrast, proof of unlawful interference with contracts is generally considerably less direct, and it is less reasonable in such a case to demand that the plaintiff proffer admissible evidence of its claims before it has had a fair opportunity to conduct discovery.

It follows that if the Court would not grant summary judgment on the present record, it should not form the slightly more drastic conclusion that the claims against Galluccio are so meritless that an inference of fraudulent joinder is warranted.

### C. *Coda*

There is a further wrinkle that deserves comment, because it has relevance to both the timeliness and fraudulent joinder issues.

One might wonder why the defendants did not seek to eliminate Galluccio from the suit via a summary judgment motion in the state court and then remove the Galluccio-less case. The state court's grant of summary judgment would seem to qualify as an "order" comfortably within the ordinary meaning of § 1446(b) so as to provide an opportunity for timely removal.

One reason, of course, is that the state court might have taken the same view that I have of a summary judgment challenge before the plaintiff has had an adequate opportunity for discovery, and the motion might therefore have failed. That presumably would have doomed any following argument that Galluccio had been fraudulently joined.

■ There is another reason, however, that the defendants candidly acknowledged at the hearing on the motion to remand. The Supreme Court long ago made clear that a case that was not removable when initially brought, because there was not complete diversity, would become removable by the elimination of all nondiverse defendants *only if* the change resulted from the voluntary act of the plaintiff, such as a voluntary dismissal. The elimination of nondiverse parties over the objection of the plaintiff, such as by a ruling on a defendant's motion for summary judgment, would not make the case removable. *See American Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 315–16, 35 S.Ct. 355, 59 L.Ed. 594 (1915); *see also Powers v. Chesapeake & O. Ry. Co.*, 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898). There could be some question whether that rule endures after the amendment to § 1446(b) that permits a new opportunity for removal after a party receives an "order" that makes the case removable. The Supreme Court has not answered that question, but the consensus of the lower courts is that the rule retains its vital force. *See* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723, at 583 & n. 22 (3d ed.1998).

In this case, application of the rule would mean that even if the state court granted the defendants' motion and dismissed the plaintiff's claims against Galluccio, leaving only "diverse" defendants,

the case could *not* then be removed. The defendants have sought to avoid the effect of the *Kettelhake* rule by refraining from presenting their summary judgment argument to the state court—a no-win proposition for their removal objective—and instead presenting it here disguised as a fraudulent joinder claim. Perhaps they should be given credit for their ingenuity, but it should not surprise them that a federal court, careful of the limits of its diversity jurisdiction, is, in the circumstances, unwilling to indulge the masquerade.

### Order

For all the foregoing reasons, it is ORDERED that the plaintiff's motion to remand the case to the Massachusetts Superior Court is GRANTED, and the case is REMANDED.