ROBERTS v AUTOMOBILE CLUB OF MICHIGAN

Docket No. 66805. Submitted February 22, 1984, at Detroit.—Decided November 5, 1984.

Plaintiffs, Clifford Roberts, Stanley Snyder and five others, were employed as commission sales representatives by defendants, which are five separate corporations acting under the umbrella of the Automobile Club of Michigan. Plaintiffs had been hired prior to the certification of the Michigan AAA Sales Association as the collective-bargaining representative of all of defendants' commission sales representatives. Defendants and the union attempted to negotiate a collective-bargaining agreement. One of the issues during negotiation was defendants' proposal to adopt minimum production standards, pursuant to which a sales representative who failed to reach the minimum standard would receive warnings, probation, and finally termination. When the parties failed to reach an agreement defendants declared an impasse and then implemented the minimum production standards. Four months later, several of defendants' sales representatives, including plaintiffs, were discharged pursuant to the production standards and were offered lower-paying salaried positions. Plaintiffs brought an action in Wayne Circuit Court seeking injunctive relief and damages, claiming that they each had an oral employment contract in which defendants agreed not to demote or discharge the plaintiffs without just cause, and that defendants had breached these contracts. Defendants moved for accelerated judgment, claiming that the National Labor Relations Act preempted state court jurisdiction over the matter. The trial court, William Leo Cahalan, J., held that jurisdiction was not preempted and denied the motion. Defendants appealed by leave granted. *Held:*

1. State regulations and causes of action are preempted by

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 36.
[2, 5, 6] 48A Am Jur 2d, Labor and Labor Relations §§ 1727, 1729, 1735.
[3] 48 Am Jur 2d, Labor and Labor Relations § 966.
[4] 48 Am Jur 2d, Labor and Labor Relations § 1081.
[6] 48 Am Jur 2d, Labor and Labor Relations §§ 1070, 1071.

the National Labor Relations Act if they concern conduct which is actually or arguably either prohibited or protected by the act or conduct which Congress intended to be unregulated and left to the free play of economic forces.

2. The issues which would be decided by the state court or by the National Labor Relations Board would be different in this case. The state court would decide whether there was an implied employment contract and, if so, whether it was breached. The NLRB would decide whether defendants' unilateral implementation of the production standards was a violation of their duty to bargain and whether a genuine impasse had been reached. The state interests in adjudicating contractual rights outweigh any possible interference with the federal labor laws which might result from permitting the action for breach of contract to proceed.

3. Individual contract rights are not extinguished until the parties enter into a valid collective-bargaining agreement. The plaintiffs' breach of contract action may proceed in the circuit court.

Affirmed.

1. JUDGMENTS — ACCELERATED JUDGMENT.

All well-pled allegations in the complaint are to be accepted as true and construed most favorably to the plaintiff when considering a defendant's motion for accelerated judgment (GCR 1963, 116).

2. LABOR RELATIONS — FEDERAL PREEMPTION.

State regulations or causes of action are preempted by the National Labor Relations Act if they concern conduct which is actually or arguably either prohibited or protected by the National Labor Relations Act or concern conduct which Congress intended to be unregulated and left to the free play of economic forces (29 USC 151 *et seq.*).

3. LABOR RELATIONS — COLLECTIVE BARGAINING.

An employer has a duty to bargain collectively with a representative of its employees, but neither party is obliged to agree to a proposal or to make a concession (29 USC 158[a], [d]).

4. LABOR RELATIONS — COLLECTIVE BARGAINING — IMPASSE — UNILATERAL CHANGES.

An employer may not make a unilateral change in the conditions of employment which are under negotiation; however, following an impasse in negotiations, an employer is generally free to make unilateral changes in wages, hours and other terms and

conditions of employment, provided the employer has bargained in good faith and a bona fide impasse has been reached.

5. LABOR RELATIONS — FEDERAL PREEMPTION — STATE LAW.

A state may, without federal preemption by the National Labor Relations Act, regulate conduct which is of only peripheral concern to the act or which is so deeply rooted in local law that the courts should not assume that Congress intended to preempt the application of state law.

6. LABOR RELATIONS — EMPLOYMENT CONTRACTS — COLLECTIVE BARGAINING — ACTIONS.

The contract rights of individual employees under their employment contracts are not extinguished during negotiations for a collective-bargaining agreement pursuant to the National Labor Relations Act until the parties have entered into a valid agreement; until such an agreement is entered into, an employee may pursue an action in a state court for breach of the employment contract.

*Greenspon, Scheff & Washington, P.C.* (by *George B. Washington),* for plaintiffs.

*Fox & Grove* (by *Kalvin M. Grove* and *Steven L. Gillman),* and *Levin, Levin, Garvett & Dill* (by *Robert J. Finkel),* for defendants.

Before: D. E. HOLBROOK, JR., P.J., and MAC-KENZIE and E. A. QUINNELL,* JJ.

E. A. QUINNELL, J. Defendants appeal by leave granted, GCR 1963, 806.3(1)(a)(ii), from a circuit court order denying their motion for accelerated judgment under GCR 1963, 116.1(2). The circuit court rejected defendants' argument that state court subject-matter jurisdiction was preempted by the National Labor Relations Act (NLRA), 29 USC 151 *et seq.* We affirm.

## I

Plaintiffs were hired as commission sales repre-

* Circuit judge, sitting on the Court of Appeals by assignment.

sentatives prior to February 7, 1978, the certification date of plaintiffs' collective-bargaining representative, the Michigan AAA Sales Association (union). Defendants are five separate corporations acting under the umbrella of the Automobile Club of Michigan. After certification and prior to August 13, 1981, defendants and the union met numerous times in an attempt to negotiate a collective-bargaining agreement. One of the central issues during negotiations was defendants' proposal to adopt minimum production standards. Under this proposal, a sales representative would receive an oral warning, followed in later months by a written warning, probation, and finally termination if the representative failed to reach the minimum standard for four consecutive months.

The parties did not reach an agreement. In July 1981, the defendants made their final offer which included the minimum production standards. The union rejected this proposal. Defendants then declared an impasse and implemented the minimum production standards, effective September 1, 1981. In January 1982, 40 of defendants' 570 commission sales representatives were discharged pursuant to the minimum production standards and offered lower paying salaried positions as advisors. These demotions followed the scheduled progressive discipline steps for violation of the minimum production standards.

Plaintiffs, seven individual sales representatives, filed suit in circuit court seeking a temporary restraining order, permanent injunction, and damages. The substance of plaintiffs' claims was based on *Toussaint v Blue Cross & Blue Shield,* 408 Mich 579; 292 NW2d 880 (1980), *reh den* 409 Mich 1101 (1980). Plaintiffs alleged that they each had an oral employment contract, entered into at the time of their hire prior to union representation, in

which defendants agreed not to demote or discharge plaintiffs without just cause. Plaintiffs claimed that defendants breached these contracts, since violations of the minimum production standards did not constitute "cause" under the original employment contracts.[1] Defendants argued that the NLRA preempted state court jurisdiction and moved for accelerated judgment under GCR 1963, 116.1(2). The circuit court denied the motion for accelerated judgment, finding that its subject-matter jurisdiction over plaintiffs' breach of contract claim was not preempted by the NLRA. We agree with the circuit court, and adopt its analysis with only minor variations.

## II

In determining whether to grant a motion for accelerated judgment, all well-pled allegations in the complaint are to be accepted as true and construed most favorably to the plaintiff. *George v Petoskey,* 55 Mich App 433, 435; 223 NW2d 6 (1974). Thus, for purposes of determining whether plaintiffs' cause of action has been preempted by the NLRA, we assume that each plaintiff had an oral employment contract with defendants in which defendants agreed not to terminate or demote plaintiffs without just cause.

The United States Supreme Court has developed two doctrines for determining whether state regulations or causes of action are preempted by the NLRA. Under the first, set out in *San Diego Building Trades Council v Garmon,* 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959), state regulations and causes of action are preempted if they concern

---

[1] Plaintiffs' complaint also contained counts alleging (1) miscalculation of production levels, (2) age discrimination, and (3) unlawful "redlining". These counts are not involved in this appeal.

conduct which is actually or arguably either prohibited or protected by the NLRA. The second preemption doctrine, set out in *Int'l Ass'n of Machinists & Aerospace Workers v Wisconsin Employment Relations Comm,* 427 US 132; 96 S Ct 2548; 49 L Ed 2d 396 (1976), proscribes state regulation and causes of action concerning *(Machinists)* conduct that Congress intended to be unregulated and left to the free play of economic forces.

Defendants assert that plaintiffs' suit for breach of contract, aimed at redressing defendants' unilateral implementation of the minimum production standards, is preempted under both the *Garmon* and *Machinists* theories of preemption. The issue in this case is one of conflict between defendants' claim that implementing their final offer, which included the minimum performance standards, was an integral part of the collective-bargaining process and plaintiffs' claim that the implementation of the minimum production standards was a breach of plaintiffs' pre-existing employment contracts under state law.

Under § 8(a)(5) of the NLRA, an employer has the duty to bargain collectively with a representative of its employees. 29 USC 158(a)(5). Section 8(d), which defines this duty to include the obligation to meet at reasonable times and places to bargain over wages, hours, and other conditions of employment, does not compel either party to agree to a proposal or make a concession. 29 USC 158(d). An employer's unilateral change in the conditions of employment under negotiation is a violation of § 8(a)(5). However, following an impasse in negotiations, an employer is, generally, free to make unilateral changes in wages, hours and other terms and conditions of employment. *Bi-Rite Foods, Inc,* 147 NLRB 59 (1964). Nevertheless, the

employer does not have the right to unilaterally change employment conditions unless it bargained in good faith and reached a bona fide impasse in negotiations. The employer must fulfill these prerequisites, prior to implementing the final offer, or its conduct will constitute an unfair labor practice under the NLRA. On the issue of impasse, see, generally, Gorman, Labor Law—Basic Text, pp 439-454.

### III

We first address defendants' argument that plaintiffs' breach of contract cause of action is preempted under the *Garmon* theory of preemption which precludes state actions concerning matters at least arguably prohibited by the NLRA. Defendants assert that their unilateral implementation of the minimum production standards was "arguably prohibited" by § 8(a)(5) of the NLRA, since the company did not have the right to unilaterally change employment conditions unless a bona fide impasse was reached. Thus, defendants argue that the implementation of the minimum production standards is "arguably prohibited" by the NLRA and plaintiffs' sole source of relief is the National Labor Relations Board (NLRB).

The Supreme Court has indicated that the *Garmon* guidelines are not to be applied in a literal, mechanical fashion, and it has developed a number of exceptions to *Garmon* preemption which are particularly applicable where states seek to regulate conduct which is arguably *prohibited* rather than arguably *protected*. *Sears, Roebuck & Co v San Diego County Dist Council of Carpenters,* 436 US 180, 194-197; 98 S Ct 1745; 56 L Ed 2d 209 (1978). A state may regulate conduct that is of only peripheral concern to the NLRA or which is

so deeply rooted in local law that the courts should not assume that Congress intended to preempt the application of state law. *Garmon, supra,* 359 US 243-244.

In *Linn v United Plant Guard Workers of America,* 383 US 53; 86 S Ct 657; 15 L Ed 2d 582 (1966), the Court held that an employer official, who was allegedly libeled during a union organizing campaign, could maintain an action for defamation despite the fact that the union conduct was arguably an unfair labor practice under § 8(b)(1)(A) of the NLRA. Similarly, in *Farmer v United Brotherhood of Carpenters & Joiners of Amercia,* 430 US 290; 97 S Ct 1056; 51 L Ed 2d 338 (1977), the Court held that the NLRA did not preempt a state action for intentional infliction of emotional distress, despite the arguably prohibited nature of the conduct. The Court identified two factors which warranted a departure from the general preemption guidelines. First, there existed a significant state interest in protecting its citizens from the challenged conduct. Second, the exercise of state jurisdiction over the tort claim entailed little risk of interference with the regulatory jurisdiction of the NLRB, since the controversies presented to the state and federal forums would be different. *Farmer, supra,* pp 304-305.

In *Sears, Roebuck & Co v Carpenters, supra,* the Court held that a state trespass action to enjoin peaceful picketing was not preempted. In that case, union pickets were stationed on Sears's property. When the union refused to remove the pickets, Sears obtained an injunction against the trespass and the pickets moved to a nearby public sidewalk. Finding, among other things, that the picketing was arguably prohibited under § 8, the Court, following the reasoning of *Farmer,* indicated that the critical inquiry was "whether the

controversy presented to the state court is identical to * * * or different from * * * that which could have been, but was not, presented to the Labor Board". *Sears, supra,* p 197. The Court concluded that there was little risk of interference with the NLRB's regulatory jurisdiction, since the state court action concerned only the *location* of the picketing while the arguably unfair labor practice would focus on the *object* of the picketing. *Sears, supra,* p 198.

Recently, in *Belknap, Inc v Hale,* — US —; 103 S Ct 3172; 77 L Ed 2d 798 (1983), the Court held that employees hired to replace striking workers could maintain causes of action in state court for misrepresentation and breach of contract. Although the replacement employees were hired as permanent employees, after the strike was settled the replacement employees were laid off to make room for the returning strikers. The replacement employees sued in state court for misrepresentation and breach of contract. The Court found that, even though the contracts for permanent employment in this instance were arguably prohibited by the NLRA, the state action was permissible since the foci of the determinations by the NLRB and the state court differed and the state had a substantial interest in protecting its citizens from misrepresentation and in providing remedies for breach of contract. The Court concluded that, since the NLRB could provide no relief to the discharged replacement employees, the state's interests clearly outweighed any possible interference with the NLRB's function that might result from permitting the state action. *Belknap, supra,* 103 S Ct 3183; 77 L Ed 2d 814-815.

Application of these principles to the facts of the instant case leads to the conclusion that state court jurisdiction is not preempted under *Garmon,*

*supra.* Plaintiffs' cause of action is based on *Toussaint, supra. Toussaint* holds, generally, that statements by an employer in its personnel policy literature and procedural manual may imply a contractual promise not to discharge the employee without good cause. The controversy presented to the state court will be different from that which would be presented to the NLRB. In the instant case, the state court is to decide whether or not there was an implied employment contract, and, if so, whether it was breached. In contrast, the NLRB would have to decide whether defendants' unilateral implementation of the production standards was a violation of their duty to bargain. The NLRB would focus on whether defendants bargained in good faith to a bona fide impasse. The NLRB would not decide whether defendants' action constituted a breach of plaintiffs' employment contracts. See, *e.g., J I Case Co v National Labor Relations Bd,* 321 US 332, 340; 64 S Ct 576; 88 L Ed 762 (1944). Since this state has a substantial interest in adjudicating contractual disputes arising within its jurisdiction, we believe, as did the United States Supreme Court in *Belknap, supra,* that state interests outweigh any possible interference with the federal labor laws that might result from permitting the action for breach of contract to proceed.

## IV

We next address defendants' argument that plaintiffs' suit for breach of contract is preempted under *Machinists v Wisconsin Employment Relations Comm, supra,* which proscribes state actions in areas Congress intended to be unregulated. Defendants contend that the right to implement a final offer following good faith bargaining is an

integral component of the collective-bargaining process which Congress intended to leave unregulated and subject to the free play of economic forces. Defendants point out that, since § 8(d) of the NLRA does not require any party to make a concession during negotiations, Congress obviously contemplated that stalemates would occur short of reaching an agreement. Once the parties have reached such a stalemate, unilateral changes are sanctioned, not only because it may break the impasse and thereby induce productive bargaining, but also because the failure of the parties to reach an agreement, after good faith negotiations, should not permanently restrain an employer from effectuating business changes. Thus, defendants argue, the NLRB and courts have recognized that an employer may make a unilateral change as a self-help economic weapon to counterbalance the employees' power to strike, which may break the deadlock of impasse, and also to relieve the employer of the requirement that it maintain the status quo once the union has refused to reach agreement.

In *Machinists,* union members refused to work overtime during negotiations for renewal of an expired collective-bargaining agreement. The NLRB dismissed a complaint of the employer, finding that there was no violation of the NLRA. Thereafter, the employer obtained an order from the Wisconsin Labor Relations Commission enjoining the union members from refusing overtime assignments, based on a finding that the union had committed an unfair labor practice under state law. The Supreme Court found that the NLRA preempted state or federal causes of action where it was determined that Congress intended the conduct to be unregulated and left to the free play of economic forces. The Supreme Court stated:

"Whether self-help economic activities are employed by employer or union, the crucial inquiry regarding preemption is the same: whether 'the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the Act's processes.' " 427 US 132, 147-148 (quoting from *Brotherhood of Railroad Trainmen v Jacksonville Terminal Co,* 394 US 369, 380; 89 S Ct 1109; 22 L Ed 2d 344 [1969]). The Court concluded that the NLRA's processes would be frustrated by the Wisconsin law, since the use of economic pressure by the parties to a labor dispute is part and parcel of the collective-bargaining process and Wisconsin had attempted to regulate the substantive aspects of the bargaining process. 427 US 132, 148-149.

Defendants herein argue that, as in *Machinists,* plaintiffs may not maintain a breach of contract action which would frustrate the employer's right to implement its final offer after negotiations have reached impasse. We believe that the circuit court correctly read *Machinists* in light of Justice Powell's concurrence:

"I write to make clear my understanding that the Court's opinion does not, however, preclude the States from enforcing, in the context of a labor dispute, 'neutral' state statutes or rules of decision: state laws that are not directed toward altering the bargaining positions of employers or unions but which may have an incidental effect on relative bargaining strength. Except where Congress has specifically provided otherwise, the States generally should remain free to enforce, for example, their law of torts or of contracts, and other laws reflecting neutral public policy.* See Cox, Labor Law Preemption Revisited, 85 Harv L Rev 1337, 1355-1356 (1972).

---

"* State laws should not be regarded as neutral if they reflect an accommodation of the special interests of employers, unions, or the

public in areas such as employee self-organization, labor disputes, or collective bargaining." 427 US 132, 156.

In the instant case, the circuit court concluded that state enforcement of an employment contract does not directly regulate the concerns of the NLRA. Although enforcement of an employment contract may have an incidental effect on the collective-bargaining process, the employer's right to implement its final offer emanates from its common-law, entrepreneurial right to run its business. However, the employer's common-law right to implement its final offer must be seen as limited by the employer's common-law duty to honor its contracts of employment. We believe that this is the appropriate accommodation of the parties' rights. A similar accommodation was found in *Belknap, supra.*

Defendants also argue, under the *Machinists* doctrine, that pre-existing employment contract rights cannot be used to supersede the results of collective bargaining. Defendants concede that rights under individual employment contracts survive election of a union and the beginning of negotiations, but contend that those claims disappear when impasse is reached. To hold otherwise, defendants argue, would obviate the process of collective bargaining. We disagree.

In *National Licorice Co v National Labor Relations Bd,* 309 US 350; 60 S Ct 569; 84 L Ed 799 (1940), the Court considered a prior employment agreement which purportedly foreclosed employees from striking, from demanding a closed shop, and from signing agreements with any union. In sustaining the order of the NLRB forbidding the employer from enforcing the prior agreements, the Court stated:

"The effect of the Board's order, as we construe it, is

to preclude the [employer] from taking any benefit of the contracts which were procured through violation of the Act and which are themselves continuing means of violating it, and from carrying out any of the contract provisions, the effect of which would be to infringe the rights guaranteed by the National Labor Relations Act. *It does not foreclose the employees from taking any action to secure an adjudication upon the contracts, nor prejudge their rights in the event of such adjudication.* We do not now consider their nature and extent. It is sufficient to say here that it will not be open to any tribunal to compel the employer to perform the acts, which, even though he has bound himself by contract to do them, would violate the Board's order or be inconsistent with any part of it." 309 US 350, 365 (emphasis added).

The Court's construction of the order illustrated its concern for preserving the contract rights of the employees. The Court also read the order to be directed solely to the employer and as "ineffective to determine any private rights of the employees and leaves them free to assert such legal rights as they may have acquired under their contracts, in any appropriate tribunal * * *". *National Licorice,* 309 US 350, 366.

Similarly, in *JI Case Co v NLRB, supra,* the United States Supreme Court upheld an NLRB finding that the employer could not use pre-existing individual employment contracts as a device to avoid collective bargaining with its employees. Contrary to the suggestion of defendants herein, the Court did not hold that the terms of an individual employment contract were totally extinguished. The Court stated:

"Care has been taken in the opinions of the Court to reserve a field for the individual contract, even in industries covered by the National Labor Relations Act, not merely as an act or evidence of hiring, but also in

the sense of a completely individually bargained contract setting out terms of employment, because there are circumstances in which it may legally be used, in fact, in which there is no alternative. Without limiting the possibilities, instances such as the following will occur: Men may continue work after a collective agreement expires and, despite negotiation in good faith, *the negotiation may be deadlocked or delayed; in the interim express or implied individual agreements may be held to govern."* 321 US 336-337 (emphasis added).

The specific language of *JI Case* indicates that individual contract rights are not extinguished until the parties enter into a valid collective-bargaining agreement. Plaintiffs' actions for breach of contract are enforceable in state court.

## V

We hold that plaintiffs are not prohibited from maintaining breach of contract actions under either the *Garmon* or the *Machinists* doctrine of federal preemption. Therefore, the judgment of the circuit court is affirmed and this cause is remanded for proceedings not inconsistent with this opinion.

Affirmed. No costs, a public question being involved.