Jimmy **ALEXANDER** and Edward J. DeBono, Plaintiffs,

v.

**UDV NORTH AMERICA, INC.,** Melvin Noel Hanna, and D. Phillip Fletcher, Defendants.

No. 99–72891.

United States District Court, E.D. Michigan, Southern Division.

Dec. 16, 1999.

---

Doyle O'Connor, Detroit, MI, for Plaintiffs.

Craig M. Stanley, Detroit, MI, for Defendants.

### OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiffs Jimmy Alexander and Edward J. DeBono brought this breach-of-contract action in Wayne County Circuit Court, State of Michigan, on May 6, 1999, alleging that their employer, Defendant UDV North America, Inc. ("UDVNA"), and two former managerial employees of UDVNA, Defendants Melvin Noel Hanna and D. Phillip Fletcher, breached or were about to breach a "Personal Guarantee and Legal Contract" (the "Guarantee") the parties or their predecessors-in-interest had executed in 1981. Specifically, Plaintiffs contend that UDVNA's announced intention to close its production facility in Allen Park. Michigan contravenes certain assurances of job security contained in the Guarantee.

On June 7, 1999, UDVNA removed the case to this Court pursuant to 28 U.S.C. § 1441, citing complete diversity among the parties and complete preemption of Plaintiffs' breach-of-contract claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Although Plaintiffs are Michigan residents and have named another Michigan resident, Melvin Noel Hanna, as a Defendant, UDVNA alleges in its Notice of Removal that the individual Defendants were fraudulently joined as parties, and therefore should be disregarded for purposes of determining whether diversity of citizenship exists. Next, UDVNA's Notice of Removal states that Plaintiffs' breach-of-contract claim, while seemingly a state-law claim on its face, effectively arises under federal law by virtue of a series of collective bargaining agreements ("CBAs") executed by UDVNA (or its predecessors-in-interest) and Plaintiffs' unions which allegedly contradict and supersede the terms of the Guarantee.

By motion filed on July 7, 1999, Plaintiffs now seek the remand of this action to state court, arguing that the doctrine of complete preemption does not reach their breach-of-contract claim, and that they have stated viable claims against individual Defendants Hanna and Fletcher. UDVNA responded to this motion on July 26, 1999, and Plaintiffs filed a supplemental

brief on November 23, 1999. Having reviewed the pleadings, as well as the briefs and supporting materials submitted by the parties, the Court finds that oral argument on Plaintiffs' motion is not necessary, and that it is appropriate to decide this motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This Opinion and Order sets forth the Court's ruling on this motion.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

### A. The Allegations of Plaintiffs' Complaint

For purposes of the present motion, the facts as alleged in Plaintiffs' Complaint are fairly straightforward. Plaintiffs Jimmy Alexander and Edward DeBono have been employed by Defendant UDVNA or its corporate predecessors since 1972 and 1975, respectively. UDVNA manufactures and sells distilled spirits through facilities located in several states (including Michigan) and in Ontario, Canada. At all relevant times, Plaintiffs have worked at UDVNA's Allen Park, Michigan distillery.

This case rests principally upon a document entitled "Guarantee" that Plaintiffs received in 1981 from their then-employer Heublein, Inc., a corporate predecessor to UDVNA. The document given to Plaintiff Alexander provides in its entirety:

> This is our PERSONAL GUARANTEE and your LEGAL CONTRACT that Jimmy Alexander will have a job with our Company whether the union gets into our plant or not, even though at one time or another for various reasons you may have signed a union card, as long as you perform your work satisfactorily, follow our customary plant rules, and we are economically able to operate this business successfully and work is available.

This GUARANTEE is given to you because it is the best way I know of to assure you that the Company has no intention of firing you for no good reason if there is no union in our plant.

> Has the union given you any kind of WRITTEN GUARANTEE that they will secure your job or live up to whatever promises they made to you?

> This is our WRITTEN LEGAL CONTRACT AND GUARANTEE TO YOU—compare it to the UNION SALES TALK and what the union wants to COLLECT FROM YOU when the UNION CAN'T GUARANTEE EVEN ONE THING TO YOU. Have you seen any written guarantee from the union like your COMPANY NOW PROVIDES FOR YOU?

(Plaintiffs' Motion to Remand, Ex. A.)[1] This document is dated November 23, 1981 and is signed "YOUR COMPANY," by Defendants Hanna (identified as "Plant Manager") and Fletcher (identified as "Vice President, Manufacturing"). (*Id.*)[2]

As is evident from the Guarantee itself, the Allen Park facility was the site of a 1981 organizing drive by the Teamsters Union, Local 283. Despite the Guarantees given to Plaintiffs and their co-workers, this organizing drive apparently was successful, resulting in a series of collective bargaining agreements ("CBAs") between Local 283 and Heublein or its corporate successors (including UDVNA), covering the period from 1982 through the present.

In January of 1999, UDVNA announced its intention to close its Allen Park facility and terminate the employment of most of its workers at that plant, including Plaintiffs. In their Complaint, Plaintiffs allege that these threatened job losses would violate the terms of the Guarantees they received back in 1981, as UDVNA has failed

---

1. The document given to Plaintiff DeBono is identical in every respect, except that it substitutes his name for Jimmy Alexander's. (*Id.*) According to the Complaint, similar documents were given to approximately 125 of Plaintiffs' co-workers. (Complaint at ¶ 10.)

2. According to affidavits submitted by UDVNA in support of its response to Plaintiff's motion, Defendants Fletcher and Hanna resigned from their employment with Heublein in 1982 and 1985, respectively.

to identify any permissible basis for deviating from the promise of continued employment found in the Guarantees.

## B. Procedural Background

In their Complaint filed in Wayne County Circuit Court on May 6, 1999, Plaintiffs rely solely on a state-law breach-of-contract theory of recovery, alleging that UDVNA's planned shutdown of its Allen Park facility would violate the terms of the Guarantees received by Plaintiffs in 1981.[3] Plaintiffs seek interim injunctive relief, a declaratory judgment enforcing their alleged rights under the Guarantee to continued employment by UDVNA, and an award of "any damages which have been incurred or may be incurred by Plaintiffs" while this matter is pending.

By Notice of Removal filed on June 7, 1999, UDVNA removed this action from state to federal court, citing two alternate bases for this Court's jurisdiction. First, UDVNA's Notice of Removal alleges that Plaintiffs' breach-of-contract claim is preempted by § 301 of the LMRA, and that the doctrine of "complete preemption" authorizes the removal of this "federal" claim to this Court. Second, the Notice of Removal states that there is complete diversity of citizenship as between Plaintiffs, who are Michigan residents, and UDVNA, a Connecticut corporation with its headquarters in Connecticut, and that the citizenship of the individual Defendants may be disregarded because they were fraudulently joined as parties "solely to destroy diversity jurisdiction." (Notice of Removal at ¶ 5(c).)[4]

In their present Motion to Remand filed on July 7, 1999, Plaintiffs challenge both of these bases for removal. They contend that the "complete preemption" doctrine does not apply to pre-existing individual employment contracts that stand apart from a subsequent CBA, and that they have stated viable claims against individual Defendants Hanna and Fletcher. UDVNA responded to this motion on July 26, 1999, and Plaintiffs filed a supplemental brief on November 23, 1999, directing the Court's attention to a recent decision by Judge Duggan of this Court in *Beesley v. Accuride*, No. 99–72760. Having considered the parties' arguments and reviewed the materials submitted in support of their respective positions, the Court finds that the "complete preemption" doctrine does not apply, but that removal nevertheless was properly founded upon diversity of citizenship.

## III. *ANALYSIS*

## A. The Doctrine of "Complete Preemption" Does Not Reach Plaintiffs' Breach–of–Contract Theory.

As one of its two purported bases for removing this case to this Court, UDVNA

---

3. In essence, Plaintiffs rely on rights recognized in *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), and its progeny, in which the Michigan courts held that "just cause" provisions in employment contracts are enforceable.

4. In its Notice of Removal, UDVNA did not indicate whether the individual Defendants joined in the removal, but it did state that Defendant Hanna had not yet been served with the Complaint. He subsequently was served, and filed an Answer on July 2, 1999. The record is silent on when or whether Defendant Fletcher was served, but UDVNA's brief in opposition to Plaintiffs' motion for remand shows that all three Defendants are represented by UDVNA's counsel. Neither Hanna nor Fletcher has filed any sort of document indicating his consent to removal. Although UDVNA suggests that Hanna's consent is reflected in an affidavit he provided in support of UDVNA's response to Plaintiffs' motion, this affidavit does not address removal in any way.

If the two individual Defendants were in fact fraudulently joined, then UDVNA need not have sought their consent to removal. *See Balazik v. County of Dauphin*, 44 F.3d 209, 213 n. 4 (3d Cir.1995); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir.1983). Since fraudulent joinder is only one of the two grounds cited by UDVNA in its Notice of Removal, however, the wiser course would have been to secure the consent of the other two Defendants and file the appropriate pleadings, once they had been served with the Complaint.

cites the "complete preemption" doctrine addressed by the Supreme Court in such cases as *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430 (1987), and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546 (1987). UDVNA notes that § 301 of the LMRA has been identified as one of the few federal statutes that has sufficient preemptive force to warrant application of the "complete preemption" doctrine, *Caterpillar,* 482 U.S. at 393–94, 107 S.Ct. at 2430, and argues that the doctrine is triggered here by virtue of the series of CBAs executed by UDVNA's corporate predecessors and Plaintiffs' unions. Upon reviewing *Caterpillar* and its progeny, however, the Court cannot agree that the doctrine of complete preemption reaches the breach-of-contract claim at issue in this case.

In determining whether a claim "aris[es] under" federal law, 28 U.S.C. § 1331, and thus may be removed from state to federal court under 28 U.S.C. § 1441(a), the courts generally are guided by the venerable "well-pleaded complaint" rule. This rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429. Under this rule, "the plaintiff [is] the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." 482 U.S. at 392, 107 S.Ct. at 2429. The assertion of a federal defense does not overcome this principle; indeed, even if such a defense is "anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue," the case still is not removable. 482 U.S. at 393, 107 S.Ct. at 2430.

■ If there were no basis for deviating from these principles here, the well-plead-

ed complaint rule plainly would render UDVNA's removal of this case improper. Plaintiffs' complaint relies exclusively on state-law breach-of-contract principles, with nary a reference to federal law or a collective bargaining agreement, and UDVNA in turn has raised only the federal *defense* of preemption. Yet, the defense of federal preemption, like any other defense, does not provide a basis for removal. *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430.

UDVNA, however, appeals to a recognized "corollary" to the well-pleaded complaint rule, known as the doctrine of "complete preemption." 482 U.S. at 393, 107 S.Ct. at 2430. In *Caterpillar,* the Supreme Court explained the origin of this doctrine:

> On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

482 U.S. at 393, 107 S.Ct. at 2430 (citations and footnote omitted).

■ As this Court has stated, "[i]t is now well-settled that the Labor Management Relations Act, 29 U.S.C. § 185(a), is one such statute intended by Congress to have compl[ete] preemptive force." *Haber v. Chrysler Corp.,* 958 F.Supp. 321, 327 (E.D.Mich.1997).[5] The LMRA's broad preemptive reach in all matters involving collective bargaining agreements ensures that CBAs will be uniformly construed in accordance with federal labor policy:

5. Section 301 of the LMRA provides, in relevant part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without regard to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881 (1988) (footnote omitted).[6]

 Citing a series of CBAs executed by its corporate predecessors in 1982 and thereafter, which established certain terms and conditions of Plaintiffs' employment as members of Teamsters Local 283,[7] UDVNA argues that the adjudication of Plaintiffs' breach-of-contract claim necessarily will involve the interpretation of these CBAs, and that this claim therefore is subject to complete preemption. As shown by the Supreme Court's ruling in *Caterpillar* and this Court's decision in *Haber*, however, it is not enough that a *defendant*, such as UDVNA here, has injected a matter of CBA interpretation into the proceedings. Rather, the well-pleaded complaint rule continues to vest power in the *plaintiff* to elect whether to proceed under a state or federal theory of recovery, so long as the plaintiff is not guilty of "artful pleading" that disguises a truly federal claim as one purportedly arising under state law. *See Caterpillar*, 482 U.S. at 397, 107 S.Ct. at 2432. As explained below, the Court finds no such "artful pleading" here.

In *Caterpillar*, the plaintiffs alleged that they had entered into individual agreements with their employer, Caterpillar Tractor, arising from oral and written promises allegedly made to the plaintiffs after they had transferred from hourly positions covered by a CBA to managerial or salaried positions not covered by a CBA. When Caterpillar allegedly breached these employment agreements by downgrading the plaintiffs to unionized positions and then terminating these new positions as part of a plant closing, the plaintiffs initiated a state-law breach-of-contract suit in California state court. Caterpillar removed the suit to federal court, contending that the plaintiffs' state-law claims were "in reality completely pre-empted § 301 claims, which therefore arise under federal law." 482 U.S. at 394, 107 S.Ct. at 2430. The Supreme Court disagreed:

Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." [The plaintiffs] allege that Caterpillar has entered into and breached *individual* employment contracts with them. Section 301 says nothing about the content or validity of individual employment contracts. It is true that [the plaintiffs], bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so.

6. Notwithstanding this intention to create a uniform federal standard for CBA interpretation, it is important to distinguish between the two related but distinct issues of "ordinary" federal preemption and "complete" preemption. Ordinary federal preemption, which was addressed in *Lingle*, requires that state and federal courts alike must apply federal law, but does *not* provide a basis for removal. In contrast, complete preemption, which was addressed in *Caterpillar* and *Metropolitan Life*, dictates that certain claims that raise only state-law issues on their face must neverthe-

less be viewed as "necessarily federal in character," and therefore *does* provide a basis for removal. *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546–47; *see also Warner v. Ford Motor Co.*, 46 F.3d 531, 533–34 (6th Cir.1995); *Harper v. TRW, Inc.*, 881 F.Supp. 294, 296–300 (E.D.Mich.1995).

7. As discussed below, there remains a question whether Plaintiffs' employment also was governed by a CBA prior to 1982.

482 U.S. at 394–95, 107 S.Ct. at 2431 (citations omitted). Thus, the Court held that the case was not removable to federal court. *See also Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 231 (3d Cir.1995) (finding no complete preemption of a breach-of-contract claim based on a guarantee nearly identical to the one at issue here).

In so ruling, the Supreme Court addressed—and rejected—every argument made by UDVNA in this case in support of its appeal to the complete preemption doctrine. First, the Court considered Caterpillar's contention, also made by UDVNA here, that the individual agreements alleged by the plaintiffs were, as a matter of federal labor law, "subsumed into, or eliminated by, the collective-bargaining agreement" that governed the plaintiffs' employment at the time of their termination:

> [I]ndividual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement. Caterpillar impermissibly attempts to create the prerequisites to removal by ignoring the set of facts (*i.e.,* the individual employment contracts) presented by [the plaintiffs], along with their legal characterization of those facts, and arguing that there are different facts [the plaintiffs] might have alleged that would have constituted a federal claim. In sum, Caterpillar does not seek to point out that the contract relied upon by [the plaintiffs] is in fact a collective agreement; rather it attempts to justify removal on the basis of facts not alleged in the complaint. The "artful pleading" doctrine cannot be invoked in such circumstances.

*Caterpillar,* 482 U.S. at 396–97, 107 S.Ct. at 2431–32 (citation and footnotes omitted). Similarly, in this case, UDVNA does not contend that the Guarantees relied upon by Plaintiffs are in fact CBAs. To the contrary, it is clear that the individual Guarantees were intended to *avoid* the need to negotiate a CBA with the Teamsters Union.

Next, UDVNA argues, as did Caterpillar, that complete preemption applies where the individual employment agreement alleged by the plaintiff is inconsistent with and overridden by the terms of the CBA itself. In this case, UDVNA cites a variety of CBA provisions, including an "exclusive bargaining" clause and a provision reserving the employer's discretion to make plant closing decisions, that purportedly are inconsistent with the representations made in the Guarantee, and it argues that the federal policy favoring collective bargaining requires that the CBA prevail over any contrary terms in the Guarantee. The *Caterpillar* Court, however, found that these were matters of ordinary and not complete preemption:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an

action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

482 U.S. at 398–99, 107 S.Ct. at 2433 (citation and footnotes omitted).[8]

Finally, UDVNA argues that *Caterpillar* is distinguishable because Plaintiffs, unlike the Caterpillar employees, allegedly were already covered by a CBA at the time they obtained the written Guarantees from their employer. As an initial matter, the Court notes that the record is not entirely clear on this point. In their motion, Plaintiffs assert that the Guarantees were issued "prior to the existence of a collective bargaining relationship," and that no CBA was in effect at the time Plaintiffs entered

into these individual agreements in 1981. (Plaintiffs' Motion, Br. in Support at 5.) In response, UDVNA claims that a CBA *was* in place in 1981 between its corporate predecessor and the General Industrial Employees Union Local 42, (UDVNA's Response Br. at 2, 11 n. 5), and it attaches a copy of the pre–1982 CBA and the affidavit of John Michalski, its Vice President of Human Resources, in support of this contention.

However, neither the pre–1982 CBA nor the Michalski affidavit affirmatively and specifically establishes that Plaintiffs' positions were covered by this earlier agreement. Moreover, UDVNA's Notice of Removal states that Plaintiffs' claims are based on "an alleged breach of individual employment agreements that **predated** a number of subsequently reached collective bargaining agreements," (Notice of Removal at ¶ 3 (emphasis added)), and an affirmative defense accompanying UDVNA's Answer similarly states that "[t]he

8. This important distinction between federal claims and defenses serves to distinguish this case from a Sixth Circuit decision cited by UDVNA, *Maushund v. Earl C. Smith, Inc.*, 795 F.2d 589 (6th Cir.1986). *Maushund* addresses ordinary and not complete preemption under § 301 of the LMRA, concluding that "the *Toussaint* line of cases in Michigan has no application to employment relationships which are subject to a collective bargaining agreement." 795 F.2d at 591. Although *Maushund* was originally filed in state court and removed to federal court, the complaint expressly "alleged the existence of a collective bargaining agreement," 795 F.2d at 589, and the plaintiff did not challenge, nor did the Court address, the propriety of removal.

Another case cited by UDVNA, *Roberts v. Automobile Club of Michigan*, 138 Mich.App. 488, 360 N.W.2d 224 (1984), further illustrates the distinction between ordinary and complete preemption. In that case, the Michigan Court of Appeals held that the plaintiffs' *Toussaint*-based wrongful discharge claims were not preempted by the National Labor Relations Act ("NLRA"), because any proceedings before the National Labor Relations Board "would focus on whether defendants bargained in good faith," and would not decide "whether defendants' action constituted a breach of plaintiffs' employment contracts." 360 N.W.2d at 228. By reaching and addressing this question of federal preemption,

*Roberts* shows that state courts are fully competent to adjudicate defenses arising under federal labor law.

Admittedly, this distinction between ordinary and complete preemption "is hardly a model of consistency and clarity," and has "occasioned both confusion and disagreement among the federal circuit and district courts." *Burke v. Northwest Airlines, Inc. (In re Air Disaster)*, 819 F.Supp. 1352, 1356 (E.D.Mich. 1993). Thus, in *Burke*, this Court expressed its "policy disagreement with the evolution of the 'complete preemption' doctrine," opining that it makes little sense, either as a matter of jurisdictional policy or under the federal question and removal statutes, 28 U.S.C. §§ 1331, 1441, to "find that Congress intended for federal law to replace state law, and yet hold that for purposes of removal, the action does not 'arise under the laws of the United States' such that a defendant cannot bring that case to federal court." 819 F.Supp. at 1366 n. 19. Nonetheless, the Court is bound to follow the relevant Supreme Court precedents. In this case, the distinction drawn in *Caterpillar* between "complete preemption" and the defensive assertion of "ordinary preemption" is fully applicable, where the agreement upon which Plaintiffs rest their claim plainly is not a CBA, but at most might be held unenforceable upon adjudication of a defense founded upon a CBA and federal law.

individual contracts at issue have been superseded by **subsequently negotiated** collective bargaining agreements," (Answer, Affirmative Defenses at ¶ 5 (emphasis added)). Thus, the Court cannot say with certainty whether Plaintiffs' positions were governed by a CBA at the time the Guarantees were issued.

In any event, the *Caterpillar* Court emphasized that the result in that case did not turn upon whether the plaintiffs were or were not covered by a CBA at the time they reached their individual employment agreements with Caterpillar:

> Caterpillar also contends that enforcement of individual employment contracts negotiated with employees covered by the collective-bargaining agreement would violate § 9(a) of the NLRA, 49 Stat. 453, 29 U.S.C. § 159(a), because, with exceptions not here relevant, it is an unfair labor practice "for the employer to disregard the bargaining representative by negotiating with individual employees, whether a majority or a minority, with respect to wages, hours, and working conditions." Even if these individual employment contracts were negotiated with [the plaintiffs] *while* the latter were covered by a collective agreement (which is disputed), this fact is irrelevant to the removal question. For reasons similar to those stated [elsewhere in the Court's opinion, the plaintiffs'] state-law claims might be pre-empted by the NLRA, but they would not be transformed into claims arising under federal law.

482 U.S. at 398 n. 12, 107 S.Ct. at 2432 n. 12 (citations omitted); *see also McDaniel*

*v. General Motors Corp.*, 765 F.Supp. 407, 411 (W.D.Mich.1991) (remanding a *Toussaint*-based claim to state court, and specifically rejecting the argument that "the existence of a collective bargaining agreement precludes the existence of a separate, individual contract" that might support a state-law breach-of-contract claim).[9]

This Court's decision in *Haber, supra,* likewise defeats UDVNA's appeal to the doctrine of complete preemption. In that case, the plaintiff employee, Thomas Haber, brought a wrongful discharge action in Michigan state court, contending that his discharge by defendant Chrysler breached an express promise of "just cause" employment made through company policies and statements by Chrysler management. Haber held a non-union position at the time of his discharge, but claimed that he was working under an "express agreement" that permitted him to return to a union position if Chrysler was dissatisfied with his performance as a salaried employee. Chrysler removed the case to this Court, arguing that Haber's claim "implicated" a CBA, and thus was completely preempted under § 301 of the LMRA.

This Court first held that Chrysler's removal was untimely. In the alternative, the Court found that the doctrine of complete preemption did not apply. As the Court observed, "[w]hen liability is governed by independent state law, the mere fact that a collective bargaining agreement will be consulted or referred to in the course of state-law litigation does not require the claim to be extinguished under Section 301." *Haber,* 958 F.Supp. at 327

---

**9.** In addition, the Court notes the apparent inequity of the result urged by UDVNA, under which an employer's breach of its obligation under a CBA to bargain exclusively with a union would not only render its promises to individual employees unenforceable, but would deprive those employees of the opportunity to even allege in a complaint that the employer violated state-law contract principles by failing to honor those promises. While the Court expresses no view at this time as to whether UDVNA might ultimately prevail on the question of ordinary federal preemption of Plaintiffs' state-law claims, UDVNA can hardly complain that it has been unfairly haled into court and made to account for the promises contained in the Guarantee, when its corporate predecessor deemed it appropriate as a strategic matter to provide written assurances to Plaintiffs regarding specific terms of their continued employment. Federal labor policy aside, the law generally does not permit parties to evade one contractual obligation by violating another.

(citing *Livadas v. Bradshaw*, 512 U.S. 107, 122–25, 114 S.Ct. 2068, 2078–79, 129 L.Ed.2d 93 (1994)). Thus, it was not enough that Haber's *Toussaint*-based breach-of-contract claim "implicated" a CBA, where the resolution of that state-law claim did not "require interpretation" of the CBA. 958 F.Supp. at 327–28.[10]

Given these precedents, it is clear that the doctrine of complete preemption does not reach the breach-of-contract claim asserted by Plaintiffs in this case. Plaintiffs do not refer or allude to a CBA in their Complaint, and they cannot be accused of "artful pleading" where the Guarantee upon which they rely is an individual agreement which stands apart from and makes no reference to a CBA. At most, a CBA—and hence, § 301 of the LMRA—enters the picture only through UDVNA's assertion of the *defense* of federal preemption, but *Caterpillar* confirms the well-established principle that such federal defenses do not satisfy the well-pleaded complaint rule. In the end, UDVNA's effort to overcome this long-standing rule rests upon various attempts to blur the important jurisdictional distinction between ordinary and complete preemption. While the Court has not yet been called upon to determine whether the former sort of preemption might apply here, the Court is satisfied that the latter does not.

## B. The Individual Defendants Were Fraudulently Joined in This Action.

As its next basis for removing this case from state to federal court, UDVNA claims that this Court has diversity jurisdiction because the only non-diverse party, Defendant Hanna (who, like Plaintiffs, is a Michigan resident), is a "sham defendant" who cannot be held liable under Plaintiffs' breach-of-contract theory. The Court agrees, and concludes that complete diversity exists among the proper parties to this suit.[11]

▪ As the party that removed this case, UDVNA has the burden of establishing the basis for this Court's jurisdiction. *Young v. Bailey Corp.*, 913 F.Supp. 547, 550 (E.D.Mich.1996). More specifically, because UDVNA appeals to "fraudulent joinder" of the individual Defendants as the purported basis for this Court's diversity jurisdiction, UDVNA must show "the absence of a 'reasonable basis for predicting that the state law might impose liability [on Defendants Hanna and Fletcher] on the facts involved.'" *Young*, 913 F.Supp. at 550 (quoting *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

▪ Plaintiffs' Complaint charges the individual Defendants with liability as the two signatories to the Guarantees they received from UDVNA's corporate predecessor, Heublein. In particular, Plaintiffs allege that Defendants Hanna and Fletcher signed the Guarantees not just as agents of Heublein, (Complaint at ¶ 13), but also as individuals who thereby gave their "personal guarantee[s]" of Plaintiffs' continued employment, (*id.* at ¶¶ 11, 12). In its opposition to Plaintiffs' motion to remand, however, UDVNA argues that the

---

10. Although this Court pointed to Haber's non-union status at the time of his discharge as an additional factor militating against complete preemption, this factor was not given dispositive weight. Instead, the Court merely observed that, as a non-union employee who could claim no rights under a CBA, Haber would be left altogether without a remedy if his state-law claim were deemed preempted by the LMRA. 958 F.Supp. at 328–29. The same cannot be said here, where Plaintiffs were covered by a CBA at the time UDVNA announced the closing of its Allen Park facility. In fact, UDVNA states that the Teamsters Union has challenged this plant closing as violative of the current CBA. Nevertheless, as the Supreme Court explained in *Caterpillar*, the possible availability of another remedy under a CBA does not prevent an employee from electing to assert rights allegedly conferred under an individual employment agreement that is *not* a CBA.

11. The parties apparently agree that the amount-in-controversy element of the diversity jurisdiction statute, 28 U.S.C. § 1332, *is* satisfied in this case.

Guarantee at most provides assurances from Plaintiffs' corporate employer, Heublein, and that it does not purport to bind Hanna and Fletcher as individuals.

In support of this argument, UDVNA points to the well-established principle under Michigan law that corporate officers who execute a contract on behalf of their corporation typically cannot be held individually liable for any breach of the contract. *See, e.g., Tross v. H.E.G. Clarke Co.,* 274 Mich. 263, 266, 264 N.W. 365, 366 (1936); *Feaheny v. Caldwell,* 175 Mich. App. 291, 305, 437 N.W.2d 358, 364 (1989).[12] For example, in *Tross,* the Michigan Supreme Court reversed a judgment against individual corporate officers, where the contract upon which the plaintiff based his claims "was a corporation instrument and plaintiff's damages arose from a corporation act," and where the individual officers were neither "alleged nor shown to have fraudulently induced the corporation act to the damage of plaintiff." 274 Mich. at 266, 264 N.W. at 366. Thus, the Court held that the individual officers were "not personally liable for the acts of the company" in preventing the plaintiff's performance under the contract. 274 Mich. at 266, 264 N.W. at 366.

More generally, the Michigan courts have adopted the rule that, "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *Riddle v. Lacey & Jones,* 135 Mich.App. 241, 246, 351 N.W.2d 916, 919 (1984) (quoting the Restatement (Second) of Agency § 320); *see also Mickam v. Joseph Louis Palace*

*Trust,* 849 F.Supp. 516, 520 (E.D.Mich. 1993) ("While an agent is liable for his own torts, an agent is not liable for the contracts [he] makes on behalf of a disclosed princip[al].");[13] *Hall v. Encyclopaedia Britannica, Inc.,* 325 Mich. 35, 38, 37 N.W.2d 702, 704 (1949); *Huizenga v. Withey Sheppard Assocs.,* 15 Mich.App. 628, 633, 167 N.W.2d 120, 122–23 (1969). The commentary accompanying § 320 of the Restatement further provides:

> Whether or not a person purporting to act as agent for another becomes a party to the contract depends upon the agreement between such person and the other party.... [A] principal is disclosed if, at the time of making the contract in question, the other party to it has notice that the agent is acting for a principal and of the principal's identity. One who purports to contract on behalf of a designated person does not manifest by this that he is making a contract on his own account, and only where he so manifests does the agent become a party to a contract which he makes for the principal. In the absence of other facts, the inference is that the parties have agreed that the principal is, and the agent is not, a party.

Restatement (Second) of Agency § 320 cmt. a; *see also Riddle,* 351 N.W.2d at 919 (quoting this commentary with approval).

These basic tenets of corporate and agency law determine the issue presented here. In their motion, Plaintiffs do not point to any extrinsic facts or circumstances which might indicate that Defendants Hanna and Fletcher manifested an intention to be personally bound by the

---

12. This rule is subject to only limited exceptions, such as where the corporate officer is "acting to further strictly personal motives," or where "the identity between the [individual] defendant and the corporation [is] so close" that it is appropriate to "pierc[e] the corporate veil" and hold the individual responsible for the corporate obligation. *Feaheny,* 437 N.W.2d at 364 & n. 2. Plaintiffs do not contend that either of these exceptions is applicable here.

13. The different standards for determining an agent's tort or contract liability serve to distinguish this case from the one cited in Plaintiffs' supplemental brief, *Beesley v. Accuride,* No. 99–72760 (E.D.Mich. Aug. 25, 1999) (Duggan, J.). Although an agent may be held liable for his own negligence and his principal also may be subject to vicarious liability, *see Beesley* at 5, no similar "dual liability" arises from contracts made by an agent on behalf of a principal.

terms of the Guarantee. Rather, they rely solely on the language of the Guarantee itself, and particularly its initial sentence, which states that "[t]his is our PERSONAL GUARANTEE." Plaintiffs argue that this reference to a "personal guarantee" supports at least a colorable claim against Hanna and Fletcher, and establishes that these Defendants were not fraudulently joined as parties.

The Court finds, however, that this argument cannot be reconciled with the overall language of the Guarantee, which, like any contract, must be construed as a whole. *See Associated Truck Lines, Inc. v. Baer,* 346 Mich. 106, 77 N.W.2d 384, 386 (1956). The first sentence of the Guarantee speaks of **"our"** personal guarantee that Plaintiffs "will have a job with **our Company**," and it later states that "[t]his is **our** LEGAL WRITTEN CONTRACT AND GUARANTEE TO YOU," and asks whether the union has provided any "written guarantee ... like **your COMPANY NOW PROVIDES FOR YOU?**" The Guarantee further states that **"the Company** has no intention of firing you for no good reason." Finally, the signature portion of the Guarantee is captioned "YOUR COMPANY," and the signatures of Hanna and Fletcher are preceded by the word "By" and followed by their job titles with the corporation, thus demonstrating that they signed on behalf of "YOUR COMPANY," the true party to the Guarantee.

Viewed in its entirety, then, the Guarantee plainly is a corporate document, and nothing in this document suggests that corporate agents Hanna and Fletcher agreed to be personally bound by its terms. Indeed, it is not at all clear how individuals such as Hanna and Fletcher could even perform the obligations set forth in the Guarantee. By its terms, the Guarantee assures Plaintiffs that they "will have a job with our Company ... as long as you perform your work satisfactorily, follow our customary plant rules, and we are economically able to operate this business successfully and work is available," and it also represents that "the Company has no intention of firing you." Even assuming Hanna and Fletcher had the authority as supervisory personnel to participate in decisions whether to retain or discharge Plaintiffs (which Plaintiffs have not alleged), the Guarantee purports to promise—and Plaintiffs' Complaint alleges that it promises—something much broader: that *nobody* at the corporation would discharge Plaintiffs except for cause, and that they would have "continued employment for so long as the Company is 'economically able to operate this business successfully and work is available.'" (Complaint at ¶ 8 (quoting Guarantee).) These are not the sorts of promises that particular corporate officers could be expected to perform as individuals, particularly at a company that Plaintiffs allege is an "international corporation" and "the most profitable liquor bottling and distribution company in the world." (*Id.* at ¶¶ 14, 25.)

Moreover, even if Defendants Hanna and Fletcher were, at one time, in a position to see that the corporation kept its promises set forth in the Guarantee, they certainly were in no such position by the time Plaintiffs brought this suit, almost 15 years after Hanna resigned his position in 1985, and 17 years after Fletcher resigned in 1982.[14] These individuals, then, clearly played no role in any recent breach of the Guarantee, and therefore cannot be held personally liable for any such breach. Indeed, agency law expressly accounts for this fact that corporate agents come and go, by ensuring that the true party to a contract signed by the agent—the corporation—remains obligated to perform even if the agent is no longer employed by the corporation.

---

**14.** In fact, to the extent that Hanna and Fletcher ever were individually obligated under the Guarantee, they apparently fulfilled these obligations by virtue of Plaintiffs' continued employment at Heublein throughout the time Hanna and Fletcher remained with the company.

Accordingly, the Court declines Plaintiffs' invitation to ignore these agency principles, and instead concludes that Plaintiffs have failed to identify a reasonable basis for predicting that Defendants Hanna and Fletcher might be subject to liability under a breach-of-contract theory. Given this absence of a reasonable basis for the claims against them, the Court concludes that Defendants Hanna and Fletcher were fraudulently joined, and that their presence as nominal parties has no bearing on the question whether diversity jurisdiction exists. With these two individuals removed from the inquiry, there is complete diversity among the parties to this suit, and removal thus was proper.[15]

### IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand is DENIED.

---

**15.** Although Plaintiffs call upon the Court to impose sanctions for UDVNA's allegedly "improper removal" of this suit, claiming that this removal was "premised on the factually unsupportable assertion" that Defendant Hanna was fraudulently joined in this action, (Plaintiffs' Motion, Br. in Support at 15), the Court observes that it is a far closer question whether Plaintiffs and their counsel, in naming Hanna and Fletcher as parties, satisfied their obligation under Fed.R.Civ.P. 11(b)(2) to assert only those claims that "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Plaintiffs' contention that these individual Defendants are liable solely by virtue of the words "personal guarantee" appearing in a document they signed on behalf of their company borders on frivolous, and certainly enjoys no support in the law.